**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CARL WELLS** | § | |
| | § | |
| *Plaintiff*, | § | **CASE NO. 1:23-cv-1081** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **LOTTERY.COM, INC. d/b//a** | § | |
| **SPORTS.COM, INC.** | § | |
| | § | |
| *Defendant*. | § | |

---

## ORIGINAL COMPLAINT

---

NOW COMES Carl Wells ("Plaintiff") complaining of and about Lottery.com, Inc. d/b/a Sports.com, Inc. ("Defendant" or "Lottery"), by and through the undersigned counsel, and files this, his Original Complaint and Demand for Arbitration, and states the following:

### I.    PARTIES

1.    Plaintiff CARL WELLS is an individual residing in the State of Texas.

2.    Defendant LOTTERY.COM, INC. d/b/a SPORTS.COM is incorporated under the laws of Delaware with principal executive offices located in Spicewood, Texas. Lottery's shares and warrants began trading on the NASDAQ under the symbols "LTRY" and "LTRYW," respectively. At all times pertinent to this case, Plaintiff is employed by Defendant. Defendant Lottery may be served by and through its registered agent, Sohail Quraeshi, at 20808 State Hwy 71, Unit B, Spicewood, TX 78669.

## II.    JURISDICTION AND VENUE

3.    In this case, the amount in controversy exceeds $75,000.00, exclusive of interest and costs, Plaintiff is a citizen of Texas, and Defendant is incorporated in the state of Delaware. Therefore, this Court has jurisdiction over this action pursuant to 28 USC § 1332.

4.    Venue is proper in this judicial district since all Defendant's unlawful practices alleged herein, and/or the adverse effects from these unlawful practices negatively affecting Plaintiff, were committed and/or occurred in Spicewood, Texas, located in this judicial district pursuant to 28 USC § 1391.

## III.    NATURE OF THE ACTION

5.    This is an action brought pursuant to common law breach of contract, fraud, misrepresentation, breach of the covenant of good faith and fair dealing, and violation of Delaware wage laws to correct and recover for Defendant Lottery's unlawful employment practices by failing to compensate Plaintiff for the wages he earned and continued to earn. Defendant's actions violate Delaware minimum wage laws and requirements that employees are paid on "regular pay days." Moreover, Defendant's failure to pay consideration is a breach of the employment contract entered by Plaintiff and Defendant, which has caused Plaintiff to suffer damages.

## IV.    WAIVER OF ARBITRATION

6.    "Although waiver of arbitration is a disfavored finding, the right to arbitrate—like all contract rights—is subject to waiver." *Forby v. One Techs., L.P.*, 909 F.3d 780, 783 (5th Cir. 2018) (internal quotations omitted); *see Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) (noting that federal and Texas law "strongly favor arbitration"). Generally, a party seeking

to prove waiver of a right to arbitrate must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." A party may waive enforcement of an arbitration clause by "substantially invoking the judicial process to the other party's detriment or prejudice." *Forby*, 909 F.3d at 783; *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986); *Perry Homes v. Cull*, 258 S.W.3d 580, 590 (Tex. 2008); *In re Fleetwood Homes of Tex.*, 257 S.W.3d 692, 694–95 (Tex. 2008) (orig. proceeding) (per curiam).

7.    Courts have repeatedly found default when the arbitrating authority terminates arbitration for non-payment of fees or enters a default due to non-payment. Here, AAA and JAMS administratively closed the arbitration expressly because of Defendant's nonpayment. There is no dispute that, after Plaintiff initiated arbitration, Defendant received every written notice from AAA and JAMS: requesting payment of the filing fee on July 27, 2023; the second requesting payment on August 15, 2023; and the third requesting payment on August 31, 2023. Having not received the payment in response to any of the above notices, JAMS "administratively closed" the arbitration, as evidenced by its August 31, 2023 letter.

8.    If this Court denies waiver of the arbitration clause, it is feasible that the dispute would devolve into a stalemate, with neither forum willing or able to hear Plaintiff's claims. Such an outcome would be odious to the interests of justice and would not advance any public policy favoring arbitration. Therefore, Defendant has validly waived its right to abide by the Arbitration Clause located in the employment agreement.

## V.     FACTS

9.      Plaintiff's official Employment Start Date was March, 09 2022. See attached [Carl Wells - VP of IT Offer Letter - Exhibit A] hereinafter "Employment Agreement."

10.     Plaintiff was authorized to make purchases made on behalf of the Defendant because there was not a corporate credit card established. Plaintiff was given authorization to make purchases, which was granted by CFO, Ryan Dickinson, and EVP of Technology, Ryan Peterson. Defendant agreed to reimburse Plaintiff for each purchase. Plaintiff's date of last reimbursement paid by Defendant was May 3, 2022.

11.     In May 2022, Plaintiff was provided with medical benefits and enrolled in the Defendant's 401k. On June 30, 2022 an announcement of mis-stated quarterly report.

12.     Plaintiff received regular pay roll from March 9, 2022 to July 8, 2022, and his last date of full payroll was July 8, 2022. Since that date Plaintiff continued to be employed by Defendant and continued to complete work for Defendant.

13.     On July 29, 2022, Defendant made a furlough announcement for "certain employees." Other employees, including Plaintiff, were asked to work during furlough while receiving NO compensation to date: (1) Greg Potts; (2) Brandon Marsh; (3) Trevor Selle; and (4) Ryan Peterson.

14.     On October 28, 2022, Plaintiff received threats from CEO Sohail Qureshi that Plaintiff had better comply by 10am ET. The email specifically stated that the Company believed every employee owed the Company a duty of unselfish loyalty. Yet, Defendant continued to expect Plaintiff to work even though Defendant failed to compensate Plaintiff.

15.    To date, Defendant has made several representations that Plaintiff would be fully compensated for the work performed, bonus earned, and reimbursements. As of this filing, Plaintiff has not received any compensation since July 8, 2022.

16.    For the following pay periods Defendant has failed to compensate Mr. Wells, a salaried employee based on the terms of his employment contract:

| | Pay Date | Gross Salary |
|---|---|---|
| a. | | |
| i. | 7/22/2022 | $ 2,622.32 |
| ii. | 8/5/2022 | $ 4,807.69 |
| iii. | 8/19/2022 | $ 9,615.38 |
| iv. | 9/2/2022 | $ 9,615.38 |
| v. | 9/16/2022 | $ 9,615.38 |
| vi. | 9/30/2022 | $ 9,615.38 |
| vii. | 10/14/2022 | $ 9,615.38 |
| viii. | 10/28/2022 | $ 9,615.38 |
| ix. | 11/11/2022 | $ 9,615.38 |
| x. | 11/25/2022 | $ 9,615.38 |
| xi. | 12/9/2022 | $ 9,615.38 |
| xii. | 12/23/2022 | $ 9,615.38 |
| xiii. | 1/6/2023 | $ 9,615.38 |
| xiv. | Annual Bonus | $37,500.00 |
| xv. | 1/20/2023 | $ 9,615.38 |
| xvi. | 2/3/2023 | $ 9,615.38 |
| xvii. | 2/17/2023 | $ 9,615.38 |
| xviii. | 3/3/2023 | $ 9,615.38 |
| xix. | 3/17/2023 | $ 9,615.38 |
| xx. | 3/31/2023 | $ 9,615.38 |
| xxi. | 4/14/2023 | $ 9,615.38 |
| xxii. | 4/28/2023 | $ 9,615.38 |
| xxiii. | 5/12/2023 | $ 9,615.38 |
| xxiv. | 5/26/2023 | $ 9,615.38 |
| xxv. | 6/9/2023 | $ 9,615.38 |
| xxvi. | 6/23/2023 | $ 9,615.38 |
| xxvii. | 7/7/2023 | $ 9,615.38 |
| xxviii. | 7/21/2023 | $ 9,615.38 |
| xxix. | 8/4/2023 | $ 9,615.38 |
| xxx. | 8/18/2023 | $ 9,615.38 |
| xxxi. | 9/1/2023 | $ 9,615.38 |
| xxxii. | 9/15/2023 | $ 9,615.38 |

| | | |
|---|---|---|
| xxxiii. | 9/29/2023 | $ 9,615.38 |
| | **TOTAL:** | **$296,671.79+** |

17.    For the following pay periods Defendant has failed to reimburse Mr. Wells, a salaried

employee based on the terms of his employment contract:

| | Invoice Date | Amount Owed |
|---|---|---|
| a. | | |
| i. | 6/10/2022 | $ 7,589.08 |
| ii. | 6/28/2022 | $ 5,464.39 |
| iii. | 7/12/2022 | $ 513.03 |
| iv. | 7/12/2022 | $ 240.15 |
| v. | 7/14/2022 | $ 639.29 |
| vi. | 7/29/2022 | $ 511.68 |
| vii. | 8/1/2022 | $ 1,044.43 |
| viii. | 8/11/2022 | $ 614.15 |
| ix. | 8/15/2022 | $ 639.29 |
| x. | 8/19/2022 | $ 113.98 |
| xi. | 8/24/2022 | $ 551.97 |
| xii. | 9/6/2022 | $ 1,427.26 |
| xiii. | 9/20/2022 | $ 99.95 |
| xiv. | 10/03/2022 | $ 106.40 |
| xv. | 10/18/2022 | $ 99.95 |
| xvi. | 11/3/2022 | $ 413.66 |
| xvii. | 11/3/2022 | $ 7,710.20 |
| xviii. | 11/7/2022 | $ 528.00 |
| xix. | 11/23/2022 | $ 299.99 |
| xx. | 11/23/2022 | $ 3,001.22 |
| xxi. | 11/30/2022 | $ 551.97 |
| | **TOTAL:** | **$46,380.31** |

## VI.    CAUSES OF ACTION

### 1. <u>BREACH OF CONTRACT</u>

18.    On March 9, 2022, Plaintiff and Defendant entered into a written employment contract

[Exhibit A] whereby Plaintiff was employed to perform services as Vice President of Information

Technology of Lottery.com. The offer letter stated the essential terms of the employment

relationship between Plaintiff and Defendant.

19.    The contract was supported by mutual consideration.

20.    The contract incorporated the laws of Delaware.

21.    Defendant Lottery breached the contract by:

      a.     Failing to pay Plaintiff his bi-weekly salary of $9,615.39 (being $250,000 annualized) – from 7/22/2022 to present;

      b.     Failing to pay Plaintiff his annual bonus

      c.     Failing to reimburse Plaintiff for moving and closing costs; and

      d.     Making false misrepresentations that Plaintiff would be compensated.

22.    Plaintiff fully performed his obligations under the contract; however, Defendant continues to willfully breach the agreement by failing to compensate Plaintiff on a regular bi-weekly basis. Plaintiff fully performed his obligations to be awarded his annual bonus, yet Defendant has not compensated Plaintiff since July 7, 2022.

23.    As a direct and proximate result of Defendant Lottery's breach, Plaintiff incurred direct damages including but not limited to, the loss of salary and lost employment benefits due him under the contract, together with reasonable attorney fees and interest as allowed by law.

## 2. <u>COMMON LAW FRAUD AND FRAUD IN THE INDUCEMENT</u>

24.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

25.    Plaintiff would not have entered into the contract but for the reasonable expectations from representations exhibited in the terms of the contract that he would not be compensated for his work for over ten months. In addition representatives for Defendant represented and assured Plaintiff that they would honor all contract terms and fully compensate Plaintiff. Defendant knew or should have known these representations were false or made recklessly.

26.    These representations and/or omissions were material and were made or omitted with the intent that Plaintiff rely upon them. Defendant Lottery had an obligation to fully disclose information to Plaintiff but failed to do so. Plaintiff relied upon such representations and/or omissions to his detriment and has suffered damages in excess of the minimum jurisdictional limits for which he now sues.

27.    Defendant made a material misrepresentation that Plaintiff would be fully compensated for all the pay periods missed. Defendant Lottery knew the representation was false or made the representation recklessly without any knowledge of its truth because Defendant continued to NOT compensate Plaintiff after these representations were made. Defendant made the representations with the intent that the Plaintiff would act on that representation or intended to induce the Plaintiff's reliance on the representation so that Plaintiff would not bring claims against it. Causing Plaintiff to suffer an injury by actively and justifiably relying on that representation so that he suffered damages including but not limited to the loss of contracted salary, future salary, lost employee benefits, diminished earnings capacity, lost career and business opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages.

**3.  COMMON LAW MISREPRESENTATION**

28.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

29.    Defendant Lottery represented to Plaintiff that (1) he would be fully compensated for the unpaid wages from July 22, 2022 to present; (2) that Defendant would honor all contract terms including reimbursing Plaintiff for moving and closing costs; (3) that Defendant would

compensate Plaintiff for his annual bonus earned in 2022. Defendant's statements were made negligently without due care. Plaintiff has suffered actual damages for which he now sues.

30.    Defendant made representations to Plaintiff that he would be fully compensated. Defendant, in bad faith, failed to exercise reasonable care or competence in obtaining or communicating the misinformation, given that Plaintiff was never given a direct response to when he would be fully compensated. Plaintiff justifiably relied on Defendant's material statements that he would eventually be fully compensated, therefore, Defendant negligently misrepresented that Plaintiff would be compensated, which proximately caused Plaintiff's injury including but not limited to the loss of contracted salary, future salary, lost employee benefits, diminished earnings capacity, lost career and business opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages.

### 4.  BREACH OF THE COVENANT OF GOOD-FAITH AND FAIR DEALING

31.    Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

32.    Implied in every contract is an obligation to engage in good faith and deal fairly with the other party to the agreement.

33.    Despite the specific provisions of the employment agreement requiring a bi-weekly salary, Defendant improperly and without justification failed to compensate Plaintiff for over ten months (July 22, 2022 to present), which ultimately is a direct breach of the employment agreement.

34.    Defendant's conduct was a breach of the covenant of good faith and fair dealing implied in every contract, as a result of which, Plaintiff has been damaged in an amount to be proven at

trial.   Plaintiff seeks judgment against Defendant for damages, lost profits, costs, expenses, attorney fees, and any other remedy the Arbitrator deems just and appropriate.

## 5.   TEXAS PAYDAY LAW VIOLATION

35.   Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

36.   The employer is legally obligated to compensate the terminated employee with all wages owed to them within a maximum period of six days from the date of their termination. The relevant provision can be found in TEX. LAB. CODE § 61.014(a).

37.   For the sake of comprehensive comprehension and accurate application of the Texas Payday Law, it is essential to elucidate the inclusive scope of the term "wages" as mentioned in the statute. Specifically, the term "wages" not only encompasses the regular compensation owed to the employee but also extends to encompass commissions and any other form of payments, whether they are disbursed in monetary currency or non-monetary forms, that have been earned by the affected employee up until the precise moment of their termination. This expansive definition is clearly laid out in Id. § 61.016.

38.   Plaintiff was not properly compensated for his work at the applicable salary that he contracted to earn.

39.   Plaintiff now seeks damages in the amount of all respective unpaid wages, bonuses, and reimbursements, plus liquidated damages, as provided by the state wage laws in Texas. Plaintiff seeks recovery of all attorney fees, costs, and expenses of this action, to be paid by Defendant.

40.   Considering the aforementioned legal provisions, any failure of the employer to comply with the prescribed timeline for wage disbursement or any deliberate withholding of rightful

payments, including commissions and other earned sums, may be regarded as a violation of the Texas Payday Law. It is, therefore, incumbent upon all relevant parties to observe and uphold these statutory obligations to ensure fair and just treatment of employees under the purview of the Texas Payday Law.

### 6. <u>TORTIOUS INTERFERENCE WITH CONTRACT</u>

41. Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

42. Plaintiff's employment agreement with Defendant was tortuously interfered with by Defendant by and through its representatives by continuing to make false misrepresentations about Plaintiff's bi-weekly salary.

43. Defendant has tortiously interfered with the employment agreement, in bad faith, based on the following:

> a. The employment agreement [Exhibit A] was the contract subject to interference;
> b. Defendant continues to make willful and intentional acts by misrepresenting and fabricating that Plaintiff would be and will be fully compensated for his work, bonuses, reimbursements from (July 2022 to present); and
> c. Defendant's willful and intentional acts in bad faith proximately caused Plaintiff damages when he including: the loss of contracted salary, future salary, lost employee benefits, diminished earnings capacity, lost career and business opportunities, litigation expenses, loss of reputation, humiliation, embarrassment, inconvenience, mental and emotional anguish and distress and other compensatory damages.

44. Defendant acted willfully and intentionally to serve its own personal interests at Plaintiff's expense, given that Plaintiff continues to receive the 'run-around' since July 2022, completely disregarding the employment agreement in violation of Del. Code Ann. tit. 19, § 1103(b).

### 7. <u>QUANTUM MERUIT/UNJUST ENRICHMENT</u>

45.     Plaintiff incorporates by reference all of the foregoing allegations in each of the paragraphs above as if fully set forth herein.

46.     In the alternative, if for any reason Plaintiff's employment contract is not enforceable then Defendant is liable to Plaintiff for unjust enrichment. Plaintiff continues to render valuable sales services to Defendant by participating in management of Defendant s business, the benefits of which were accepted by Defendant. Plaintiff rendered management services with an understanding and expectation that Plaintiff would be compensated for his services as agreed. Defendant has accepted and continues to retain the benefits of Plaintiff s efforts by receiving and retaining substantial revenues. In the alternative to Plaintiff s breach of contract allegations, Plaintiff is entitled to recover the reasonable value of his management services rendered to Defendant.

47.     The elements of an action for quantum meruit are: (a) the Plaintiff provided valuable services or materials; (b) the services or materials were provided for the Defendant; (c) the Defendant accepted the services or materials; and (d) the Defendant had reasonable notice that the plaintiff expected compensation for the services or materials.

48.     Plaintiff was not properly compensated for his work at the applicable salary that he contracted to earn. Such services to the Company provided by Plaintiff, at the request of and on behalf of Defendant, have a reasonable fair market value in excess of the minimum jurisdictional limits of this Court, for all of which Plaintiff hereby sues.

49.     Plaintiff now seeks damages in the amount of all respective unpaid wages, bonuses, and reimbursements, plus liquidated damages. Plaintiff seeks recovery of all attorney fees, costs, and expenses of this action, to be paid by Defendant.

## VII.    PRAYER

50.    WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer herein, and that on final hearing, Plaintiff have judgment against Defendant for:

 a. All damages to which Plaintiff may be entitled pursuant to this Original Complaint, or an amendment thereto, including but not limited to back pay, future wages, reinstatement, upgrading, and compensation for benefits not received;

 b. Past, present, and future physical pain and mental suffering;

 c. Compensatory damages, including, but not limited to, emotional distress;

 d. Liquidated Damages;

 e. Punitive damages in an amount above the minimum jurisdictional limits of the Court;

 f. Reasonable attorneys' fees as allowed by law (with conditional awards in the event of appeal);

 g. Pre-judgment interest at the highest rate permitted by law;

 h. Post-judgment interest from the judgment until paid at the highest rate permitted by law;

 i. Costs of Court; and

 j. Such other and further relief, at law or in equity, to which Plaintiff may be entitled, whether by this Original Complaint or by proper amendment thereto.

Respectfully submitted,



Eddie Hodges, Jr.
Texas Bar No.: 24116523
**Alfonso Kennard, Jr.**
Texas Bar No. 24036888
Kennard Law, P.C.
5120 Woodway Dr. Suite 10010
Houston, Texas 77056
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
Email: alfonso.kennard@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**

# EXHIBIT A



**NOTICE OF CLOSING FILE**

NOTICE TO ALL PARTIES                                      August 31, 2023

RE:    **Wells, Carl vs. Lottery.com dba Sports.com**
       Reference #: 5300000324

Dear Parties:

This letter is to confirm the above referenced matter is closed as of August 31, 2023 due to non-payment of the filing fee by respondent.

Please contact me should you have any questions.


Sincerely,


Christina Socha
Senior Arbitration Practice Specialist
CSocha@jamsadr.com