**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **CARL WELLS** | § | |
| | § | |
| ***Plaintiff*,** | § | **CASE NO. 1:23-CV- 01081-RP** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **LOTTERY.COM, INC. d/b//a SPORTS.COM, INC.** | § | |
| | § | |
| | § | |
| ***Defendant*.** | § | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**

---

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE**:

Comes now Carl Wells, ("Plaintiff") files this response in opposition to Defendant Lottery.com d/b/a Sports.com d/b/a AutoLotto, Inc.'s 12(b)(6) Motion to Dismiss, filed on February 6, 2024, and Plaintiff will respectfully show the Court as follows:

## I. STATEMENT OF THE CASE

Plaintiff was hired by Defendant in March 2022, and continues to be a current employee for Defendant as of this filing. On September 11, 2023, Plaintiff was forced to file this lawsuit against Defendant asserting breach of contract claims based on unpaid wages, fraud, misrepresentation, tortious interference, and violations of state wage laws.

Defendant was timely served with this lawsuit and waived service. However, Defendant waited for months to past to appear or participate in this lawsuit. On December 8, 2023, Plaintiff was forced to file a Motion for Clerk's entry of Default, which was granted on December 11, 2023.

Defendant eventually appeared through a Notice of Appearance on December 23, 2023. On December 28, 2023, Plaintiff filed his Amended Complaint asserting claims under the Fair Labor Standards Act for failure to pay minimum wages. The Court mooted Plaintiff's Second Motion for Clerk's Entry of Default, ordering Defendant to file a responsive pleading on or before February 6, 2024. Plaintiff has filed this response within fourteen days of Defendant's Motion.

The common theme here is Defendant continues to needlessly file frivolous pleadings and motions, as a stall tactic. The crux of Defendant's 12(b)(6) states that Plaintiff has failed to allege sufficient facts, omitted pivotal elements, or the claims are not based on a cognizable legal theory. Plaintiff's Amended Complaint establishes enough facts to state a plausible claim under the FLSA and state and common law, which the pleading standard "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" sufficient to state a claim. Majority of the reasons for dismissal, outlined by Defendant in their motion, are not warranted by existing law, case law outside of the 5th Circuit, and stipulate frivolous arguments for extending, modifying, or reversing existing law, and should be disregarded by this Court. Ultimately, we ask this Court to **DENY** Defendant's 12(b)(6) Motion and take judicial notice of frivolous filings and arguments presented by Defendant.

## II. LEGAL STANDAD UNDER RULE 12(B)(6)

Rule 12(b)(6) motions to dismiss are disfavored and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Rule 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"To survive dismissal, a plaintiff must plead 'enough facts to state a claim for relief that is plausible on its face.'" *Id.* at 503 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556); *see also Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014). (when evaluating plausibility, the court does not "evaluate the plaintiff's likelihood of success" (internal quotation marks omitted)).

The Fifth Circuit has stated, Rule 12(b)(6) motions to dismiss are "'viewed with disfavor and [are] rarely granted.'" *IberiaBank Corp. v. Ill. Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (quoting *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013)).). Finally, when considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory. *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994)."

Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion. If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). However, the court may consider documents attached to a motion to dismiss under 12(b)(6); <u>if the documents are referenced in the Plaintiff's complaint and central to the Plaintiffs's claims</u>. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins*

*v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011) (emphasis added).

## III. ARGUMENT AND AUTHORITIES

### A. PLAINTIFF HAS ADEQUATELY PLED A FLSA CLAIM UNDER 29 U.S.C. § 206 (A) BASED ON DEFENDANT'S FAILURE TO PAY MINIMUM WAGES

Defendant frivolously alleges that "Plaintiff pleaded himself out of a minimum wage claim under the FLSA because Plaintiff alleges he was a high compensation individual and the head of a subdivision of Lottery.com, therefore the Court must dismiss his FLSA cause of action for failure to state a claim." Dkt. 11 ¶ 8. Defendant even took it a step further and stated the requirements of whether a highly compensated employee is deemed exempt under Section 13(a)(1), and attached FLSA Fact Sheets regarding exemptions. *Id*; *See Defendant's Exhibits*. However, a simple reading of Plaintiff's Amended Complaint would have negated Defendant's argument that Plaintiff was exempt.

Plaintiff's Amended Complaint specifically states:

> **Plaintiff is not an exempt employee under the FLSA because he was compensated less than $684 per week**, (no administrative or executive exemption applies). Specifically, **Plaintiff received no compensation during the above-mentioned time period** and continues to not receive compensation for his work performed. Dkt. 8 ¶ 20.

Plaintiff's Amended Complaint asserts that from July 22, 2022 until present – Plaintiff has received "no compensation," which is $684 less than what he is required to be compensated to be considered exempt under the FLSA. Defendant has not adequately asserted any evidence that Plaintiff did in fact receive at least $684 per week from [July 2022 – present], simply because Plaintiff has continued to complete work for Defendant on a day-to-day basis and has not received any compensation for over a year and a half.

The U.S. Department of Labor's Wage and Hour Division (WHD), which is charged with

interpreting and enforcing the FLSA's exemptions, has repeatedly reached the exact opposite conclusion of Defendant's argument. We ask the Court to take judicial notice of Fact Sheet #70 [***Exhibit B***] – *questions regarding furloughs and other reductions in pay*:

> Reductions in the predetermined salary of an employee who is exempt under Part 541 of the Department of Labor's regulations will ordinarily cause **a loss of the exemption**. Fact Sheet 70 #4.
>
> FLSA section 13(a)(1) **requires payment of at least $684* per week on a "salary" basis for those employed as exempt executive, administrative, or professional employees. See Fact Sheet #17G** . Fact Sheet 70 #4.
>
> **An employer must pay an exempt employee the full predetermined salary amount "free and clear" for any week in which the employee performs any work without regard to the number of days or hours worked**…**If the employee is ready, willing, and able to work, deductions may not be made for time when work is not available. Salary deductions are generally not permissible if the employee works less than a full day**. Except for certain limited exceptions found in 29 C.F.R. 541.602(b)(1)-(7) , **salary deductions result in loss of the section 13(a)(1) exemption**. Fact Sheet 70 #4. **EXHIBIT B.**

Plaintiff's amended complaint states Plaintiff's last date of full payroll was July 8, 2022. Since that date Plaintiff has continued to be employed by Lottery.com and continued to complete work for Lottery.com. Dkt. 8 ¶ 8. Defendant did announce that some employees would be furloughed, but Plaintiff was not included and continued to work each week since July 22, 2022. Plaintiff lost any exemption he had in July 2022, when Defendant failed to compensate Plaintiff at minimum $684 per week, which Plaintiff has adequately alleged he received no compensation during this time. The burden of establishing an exemption remains with the employer, who must do so by a preponderance of the evidence. *Adams v. All Coast, L.L.C.*, 988 F.3d 203, 206 (5th Cir. 2021). At the pleading stage, it may be "premature" to rule that an FLSA exemption forecloses a plausibly stated § 207(a)(1) claim. *White v. U.S. Corr., LLC,* 996 F.3d 302, 310 (5th Cir. 2021).

This is so, because "the 'determination as to whether an employee is exempt under the [FLSA] is primarily a question of fact' typically better suited for summary judgment." *Id*. (quoting *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)). It is too premature to determine and Defendant has failed to satisfy its burden by a preponderance of evidence that any exemption forecloses plausibility that Plaintiff did not receive the minimum $684 per week during the relevant time period [July 22, 2022 to present] to prove that an FLSA exemption applies.

Defendant also asserts the "highly compensated employees" exemption applies; however, Defendant does not set out the elements under 29 C.F.R. § 541.601 in their Motion. To qualify for the Highly Compensated Employee (HCE) exemption, Defendant must show that Plaintiff "(1) is annually compensated at least $100,000; (2) 'customarily and regularly performs any one or more of the exempt duties or responsibilities of an executive, administrative, or professional employee,' § 541.601(a) ; and (3) has within his or her primary duties the performing of office or non-manual work, § 541.601(d)." Defendant may attempt to argue that Plaintiff was compensated over $107,432, in 2022, however, Plaintiff was not annually compensated at least $107,432 during the relevant period [July 2022 to present], nor [March 2022 to July 2022] and received no compensation, thus the HCE exemption does not apply. The FLSA fact sheet attached by Defendant explicitly states, "annual compensation of $107,432 or more (**which must include at least $684* per week paid on a salary or fee basis**) are exempt." Without any evidence of payment of at least $684 per week during the relevant period [July 2022 to present]; Plaintiff is not exempt from the FLSA laws.

The FLSA is clear, Defendant was required to **pay its exempt employees the full predetermined salary amount "free and clear" for any week in which the employee performed any work without regard to the number of days or hours worked**. **EXHIBIT B.**

Plaintiff has adequately alleged he received no compensation for any and all weeks he performed work for Defendant during the relevant period [July 2022 to present]. Plaintiff adequately alleges he should have been compensated the full predetermined salary amount "free and clear" for any and all work weeks during the relevant period [July 2022 to present]. Therefore, Defendant has not satisfied its burden by a preponderance of evidence; Plaintiff received no weekly compensation nor $684 per week at minimum, thus no exemption applies during the relevant time period [July 2022 to present], and Defendant's request that this Court dismiss the FLSA claim under Rule 12(b)(6) should be **DENIED** and judicially reviewed based on Defendant's frivolous argument that was not warranted under existing laws, and stipulates frivolous arguments for extending, modifying, or reversing existing FLSA laws to apply an exemption to employees who receive $0 compensation per week during the relevant period.

B. PLAINTIFF HAS ADEQUATELY PLED A BREACH OF CONTRACT CLAIM TO SURVIVE A 12(B)(6) MOTION.

Defendant attempts to be deceptive in their Motion to make it appear that Plaintiff's breach of contract claim is insufficient because Plaintiff failed to attach an *Exhibit A* to their Complaint referencing that a contract existed between the party. Defendant alleges Plaintiff has not plead an exception to the "at-will" status, and that because he was furloughed there was no "new arrangement" to create an enforceable agreement. Furthermore, Defendant alleges that Plaintiff chose to work for Defendant after the alleged "furlough," and did so without a contract requiring Defendant to pay him." Dkt. 11 pg. 6-8.

First and foremost, the allegation that Plaintiff was "furloughed" or "laid-off" is not alleged in Plaintiff's Amended Complaint, in fact Plaintiff states that after Defendant announced the furlough, he and others **remained employed.** Dkt. 8 ¶ 13-14. Plaintiff was never given notice that he was actually "furloughed." Plaintiff alleges he continued to be employed and is still employed

as of this filing. For Defendant to assert that Plaintiff's chose to work without a contract requiring Defendant to pay is completely disingenuous and provides a preview to this Court of Defendant's malicious intent towards its employees and misleads this Court regarding the allegations in the live Complaint.

Plaintiff has attached *Exhibit A*, which contains the promise to pay Plaintiff $250,000 annually. Plaintiff has asserted that his offer letter is governed by the laws of Delaware. Plaintiff moved to Texas to complete his work for Defendant. Texas will enforce a choice-of-law clause unless (1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or (2) the chosen law would be "contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of applicable law in the absence of an effective choice of law by the parties." *Exxon Mobil Corp. v. Drennen* , 452 S.W.3d 319, 324–25 (Tex. 2014). "Even if a contract contains a choice-of-law provision in which the parties have agreed to apply the law of a different state, [Texas] as the forum will apply [its] own law to matters of remedy and procedure." *Man Indus. (India), Ltd. v. Midcontinent Express Pipeline, LLC* , 407 S.W.3d 342, 352 (Tex. App. 2013) (quoting *Autonation Direct.com, Inc. v. Thomas A Moorehead, Inc.* , 278 S.W.3d 470, 472 (Tex. App. 2009)).

Here, the chosen state Delaware has no substantial relationship to the parties, or the transaction, and there is no other reasonable basis to enforce the offer letter's choice of law clause of Delaware. Both parties reside in Texas, substantial parts of the facts occurred in Texas, and there was no relationship between the parties and Delaware outside this language in the offer letter. Therefore, in the alternative, Plaintiff pled breach of contract claims under Texas and Delaware laws upon determination of which state law applies. Both Texas and Delaware have similar breach

of contract statutes.

In Texas, the "Payday Law," provides an alternative remedial scheme for workers who have been denied wages. *See Igal*, 250 S.W.3d at 87; *Hull v. Davis*, 211 S.W.3d 461, 464 (Tex.App.-Houston [14th Dist.] 2006, no pet.). A worker has a choice either to file an administrative claim with the TWC or a common law breach of contract claim in district court. *Igal*, 250 S.W.3d at 82; *Hull*, 211 S.W.3d at 464. Here, Plaintiff has filed a breach of contract lawsuit rather than a wage claim with the TWC. Under Texas law, the essential elements of breach of contract are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Orange Solutions Inc. v. Net Direct Systems LLC*, No. 3:10-CV-2054-G, 2011 WL 2489413, at *3 (N.D. Tex. June 20, 2011) (Fish, Senior J.). Here, Defendant argues that Plaintiff has failed to plead the elements listed above. Rather, Defendant specifically contends that the Plaintiff's breach of contract claim should be dismissed because a valid contract does not exist to require Defendant to pay Plaintiff. The facts give Defendant sufficient notice of Plaintiff's breach of contract claim. At this stage, it is improper to issue fact-based decisions on whether Plaintiff was still employed during the "furlough;" or whether Defendant was an employer obligated to pay Plaintiff upon Plaintiff's performance. Until those facts are developed in the record, Plaintiff has raised a reasonable expectation that discovery will reveal evidence sufficient to state a claim for breach of contract. Moreover, Texas law provides employees who are claiming they have been denied wages to file breach of contract claims in district court. *See Douglass v. Williams*, A-11-CV-416 LY at *6 (W.D. Tex. May. 23, 2012) (denying motion for judgment on pleadings). Defendant's 12(b)(6) motion should be denied because Plaintiff has exercised his rights to file a breach of contract claim under Texas laws

because he was denied wages. Because Plaintiff was promised wages in return for his work/services, a valid contract existed. Plaintiff tendered performance by fulfilling his services for Defendant.

If the Court is of the opinion that Delaware law applies to the employment offer; to survive dismissal Plaintiff must plead "first, the existence of the contract; second, the breach of an obligation imposed by that contract; and third, the resultant damages to [him]." *VLIW Technology, LLC v. Hewlett-Packard, Co.*, 840 A.2d 606 (Del. 2003); *Broesler v. Wardens*, C.A. No. 10C-04-222 FSS (Del. Super. Ct. Feb. 28, 2011).

Defendant breached that contract under Texas and Delaware law by failing to pay Plaintiff once he tendered performance, and Plaintiff suffered damages as outlined in his Amended Complaint. Moreover, Plaintiff's offer letter specifically states,

> "Lottery.com will reimburse your reasonable and necessary travel expenses under its standard travel reimbursement policy, as amended from time to time;" and
>
> "Lottery.com shall pay those reasonable expenses, approved in advance by Lottery.com, to relocate you and your immediate family members to the Austin, Texas area, including the expenses associated with the packing, loading, and transportation of your household goods, possessions and not more than two (2) vehicles; provided, however, you shall be required to provide Lottery.com with three (3) vendor quotes from companies not affiliated with you for such service; provided, further, however, Lottery.com reserves the right to obtain an additional quote or quotes and select a vendor or vendors of its choosing and to pay such vendor or vendors directly. Such relocation has been considered and agreed by you in connection with this offer letter"

Plaintiff has alleged Defendant has breached this agreement by failing to reimburse Plaintiff for fees incurred during the relevant period; and for all reasonable expenses incurred by Plaintiff for moving and closing costs to relocate to Austin. Plaintiff has also alleged he has suffered injuries due to Defendant's breach. Here, there exists a valid contract and a promise to pay Plaintiff annualized wages of $250,000; performance was tendered by Plaintiff and continues

to be tendered by Plaintiff; Plaintiff also moved and relocated his entire family to Austin [performance]; (3) Defendant breached the contract by failing to pay wages and reimburse Plaintiff accordingly; and as a result of the breach Plaintiff suffered damages. Therefore, Defendant's 12(b)(6) Motion to Dismiss as to Plaintiff's breach of contract claim should be **DENIED**.

C. PLAINTIFF HAS ADEQUATELY PLED A FRAUD CLAIM UNDER FED. R. CIV. P. 9(B).

Defendant asserts that Plaintiff's Amended Complaint does not satisfy Rule 9(b). Defendant asserts that Plaintiff was not induced because Defendant paid Plaintiff for four, and thus there is no inference that Defendant intended to pay. Dkt. 7 pg. 7-8.

Plaintiff's Amended Complaint asserts that after Defendant announced furlough for certain employees it was represented to Plaintiff that he would continue to be employed, he was not furloughed, and Defendant would continue to honor all employment terms to fully compensate Plaintiff for his continuous work. Dkt. 8 ¶ 33-35. Plaintiff alleges that Defendant continued to represent that Plaintiff would be fully compensated for each pay period missed from [July 2022 – present]. *Id.* It is clear by Defendant's response to this lawsuit and their actions since July 2022 to present that Defendant never had any intention to compensate Plaintiff and continue to use his services without any intent to fairly compensate Plaintiff. It is even more clear that Defendant misrepresented Plaintiff's employment if it is only now alleging Plaintiff was furloughed or laid off.

Rule 9(b) imposes heightened pleading requirements on claims of fraud. "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Rule 9(b). Pleading fraud with particularity under 9(b) requires that a plaintiff "specify the statements contended to be fraudulent, identify the speaker, state when and where the

statements were made, and explain why the statements were fraudulent." *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.,* 365 F.3d 353, 362 (5th Cir. 2004) (quoting *Williams v. WMX Techs., Inc.,* 112 F.3d 175, 177-78 (5th Cir. 1997)).

Rule 9(b) must also be interpreted and applied in alignment with its four purposes: "to ensure that the defendant has sufficient information to formulate a defense by having notice of the conduct complained of; to protect defendants against frivolous suits; to eliminate fraud actions in which all the facts are learned after discovery; and to protect defendants from undeserved harm to their goodwill and reputation." *United States ex rel. Wilkins v. N. Am. Constr. Corp.,* 173 F.Supp.2d 601, 614 (S.D. Tex. 2001).

Here, Plaintiff has adequately pled fraud claim fraud with the specificity as required by Rule 9(b). However, "other than in the situations expressly enumerated in rule 9(b), e.g., allegations of actual fraud, plaintiff must satisfy only the minimal requirements of rule 8(a)." *General Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005). Here, Plaintiff has alleged actual fraud by Defendant for failing to compensate Plaintiff after continuing to make representations that Plaintiff was employed and would be compensated for his work.

According to Rule 9(b), Plaintiff's Amended Complaint gives Defendant fair notice of a fraud claim pled with specificity. Rule 9(b) requires, the who, what, when, and why statements were fraudulent and what damages flow from the fraudulent actions. Here, Plaintiff has alleged:

> "**WHO**" has been alleged as Lottery.com, the board members, corporate representatives, and CEO made representations that Plaintiff was not furloughed and continues to be employed;
>
> "**WHAT**" has been alleged as the fraudulent statements, scheme, and assurances by Lottery.com's board members and CEO that Plaintiff would remain employed and be compensated from July 2022 to present; multiple acknowledgements that Plaintiff would be paid in full;
>
> "**WHEN**" has been alleged that these statements, representations, and schemes

were made in July 2022 once Plaintiff was given notice that he was **not** furloughed, he would continue to be employed; and these statements/reassurances continues to occur because Plaintiff continues to complete work for Defendant; and

"**WHY**" has been alleged that these statements, representations, and schemes were fraudulent because Defendant has not compensated Plaintiff to date, and never intended to do so when Defendant asked Plaintiff to continue to be employed in July 2022, yet Defendant represented to Plaintiff that he was not furloughed in July 2022, and he has continued to complete work for Defendant as of this filing date.

Because of Defendant's July 2022 fraudulent representations, and subsequent misrepresentations that Plaintiff would be fully compensated and reimbursed, and continuous misrepresentation thereafter, that Plaintiff was employed (not furloughed) and would be compensated; Plaintiff continues to perform work for Defendant each week with the belief that he would be compensated for his work. Plaintiff has attached his offer letter, which created a contractual obligation for Defendant to compensate Plaintiff once he has tendered performance. *Exhibit A*. Plaintiff believed he would continue to be compensated after the July 2022 representations by Defendant that Plaintiff continued to be employed and would be compensated. It is clear that the fraudulent representations made by Lottery.com's representatives in July 2022 and representations made thereafter were false because as of this date Plaintiff has not been compensated, and Defendant continues to ask Plaintiff for work as of this filing, with no intention of compensating Plaintiff.

Plaintiff has alleged adequate facts with specificity of the alleged fraud, which is enough to satisfy Rule 9(b) and raises a reasonable expectation that discovery will reveal evidence regarding Defendant's fraud. If this Court is of the opinion that the Amended Complaint needs more facts to satisfy the Rule 9(b) heightened pleading standard; Plaintiff respectfully asks for leave to amend his Complaint to address any Rule 9(b) issues on his fraud claim.

D. PLAINTIFF HAS ADEQUATELY PLED A MISREPRESENTATION CLAIM.

Defendant alleges that Plaintiff's complaints are of promises of future conduct, therefore,

Plaintiff has failed to state a claim of negligent misrepresentation. Defendant also asserts the damages Plaintiff seeks are not recoverable on a negligent misrepresentation claim because the damages are barred by the economic loss rule.

Plaintiff's misrepresentation claim against Defendant satisfies both Rule 9(b) and Rule 12(b)(6). Under Rule 9(b), Plaintiff must allege the "who, what, where, when, and how' of the alleged fraud." *Columbia/HCA Healthcare Corp*., 125 F.3d at 903. This particularity standard applies to Plaintiff's fraud claim as well as Plaintiff's misrepresentation claim because the misrepresentation claim is "based on the same set of alleged facts" as the fraud claim. *Benchmark Elecs*., *Inc*. 343 F.3d at 723).

Here, Plaintiff plead the "who, what, where, when, and how" with regard to his misrepresentation claim against Defendant. Plaintiff alleges Defendant's representatives represented Plaintiff was not furloughed, Plaintiff would be reimbursed, and Plaintiff continued to be employed and would be compensated according to his salary. Dkt 8. Further, Plaintiff pleads Defendant made the representation in July 2022 when it announced some employees would be furloughed, but not Plaintiff, and continued to represent Plaintiff was not "furloughed." *Id.* Plaintiff also pled how Defendant's representation was false because Defendant never intended to compensate Plaintiff but continuously asked Plaintiff to complete work, as of this filing. Thus, Plaintiff's misrepresentation claim satisfies Rule 9(b).

Plaintiff's misrepresentation claim also meets Rule 12(b)'s pleading standard. A claim for misrepresentation under Texas law requires proof of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the

information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005). Therefore, we respectfully ask this Court to **DENY** Defendant's 12(b)(6) Motion as to Plaintiff's misrepresentation claim.

E. PLAINTIFF HAS ADEQUATELY PLED A QUANTUM MERUIT/UNJUST ENCRICHMENT CLAIM.

First and foremost, Plaintiff has pled Quantum Meruit in the alternative, if the Court finds that no contractual relationship existed between Plaintiff and Defendant based on his employment offer. However, Texas and Delaware law is clear that employees may bring breach of contract claims for unpaid wages.

Here, Plaintiff asserts that when he was asked to remain employed after the furlough meeting there was an implied promise that Defendant would compensate Plaintiff his regular salary if Plaintiff continued to work for Defendant. "Quantum meruit is an equitable remedy . . . based on the promise implied by law to pay for beneficial services rendered and knowingly accepted." *Vortt Exploration Co., Inc. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990) (quoting *Colbert v. Dallas Joint Stock Land Bank*, 102 S.W.2d 1031, 1034 (Tex. 1937)). To recover under quantum meruit, the plaintiff must prove that: "(1) valuable services were rendered; (2) to the party sought to be charged; (3) which services were accepted by the party sought to be charged; (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing such services, expected to be paid by the recipient." *Collins v. Aikman Floorcoverings, Inc. v. Thomason*, 256 S.W.3d 402, 407-08 (Tex. App.-San Antonio 2008, pet. denied).

Plaintiff has pled a claim of quantum meruit in the alternative, only if it is found no express contract existed to compensate Plaintiff after July 2022. Moreover, Plaintiff has alleged facts that valuable services were rendered to Defendant since July 2022, by his continuous work; services

which were accepted by Defendant, and Plaintiff, in performing such services, and after reasonable notice to Defendant, expected to be paid by Defendant. S*ee also Texas A&M Concrete, LLC v. Brae Burn Constr. Co., Ltd., L.L.P.*, No. 01-20-00438-CV, 2022 WL 2441751, at *9 (Tex. App.-Houston [1st Dist.] June 30, 2022) ("Under Texas law, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied through a quantum-meruit claim generally may do so only when there is no express contract covering those services or materials.").

Lastly, the Amended Complaint clearly provides inferences that Defendant obtained the benefit of Plaintiff's services by fraud or taking undue advantage of Plaintiff by failing to compensate Plaintiff for his services after giving him notice that he was not furloughed. If a plaintiff's unjust enrichment claim is based on a defendant's wrongful securing of a benefit, then a plaintiff must plead facts showing fraud, duress, or the taking of undue advantage. Plaintiff has alleged fraudulent action in his Complaint, and his unjust enrichment claim is based on Defendant's receipt of benefits [services rendered since July 2022] from Plaintiff that it retained without fulfilling its own obligations.

Plaintiff's live Complaint alleges adequate facts to give Defendant fair notice of Plaintiff's quantum meruit/unjust enrichment claims that are pled in the alternative. We respectfully ask this Court to **DENY** Defendant's 12(b)(6) motion as to Plaintiff's unjust enrichment/quantum meruit claims to the extent if it is found no express contract exist between Plaintiff and Defendant.

F. PLAINTIFF ASSERTS CLAIMS UNDER DELAWARE STATE LAW IN THE ALTERNATIVE ONLY IF HIS EMPLOYMENT AGREEMENT IS GOVERNED BY DELAWARE LAW.

Plaintiff has asserted three claims under Delaware law, in the alternative to allegations brought under Texas law. The purpose of filing claims under Delaware law was to protect Plaintiff in the case this Court found the employment agreement stipulates a choice of law clause in Delaware that governs Plaintiff's employment. Plaintiff's offer letter states the governing law is

Delaware, but Plaintiff has not been to Delaware and no actions in his lawsuit substantially occurred there. Because at this stage the Court has not ruled on the choice of law clause; it is unclear whether Delaware law will apply to the employment agreement between parties. If no choice of law provision exists, Plaintiff has asserted that Texas laws will apply, given that this case was filed in Texas, and Defendant is principally located in Texas, and Plaintiff completed all his work in Texas. Thus, Plaintiff's breach of the covenant of good faith and fair dealing and Delaware wage law claims are pled in the alternative, and subject to dismissal if it is found that Texas law applies to the employment agreement. Plaintiff asserts that he has satisfied his pleading burden as to each of the Delaware state law claims to allow the Court to properly deny Defendant's 12(b)(6) Motion.

1) BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

Defendant asserts that Plaintiff's claim should be dismissed under Delaware law because Plaintiff "does not identify a gap in the alleged contract that the Court should fill with an implied contractual obligation." Clearly, Plaintiff has alleged that he remained employed, and a gap exists as to whether Defendant is obligated to compensate Plaintiff after announcing furlough of other employees but retaining Plaintiff.

In Delaware, "there is an implied covenant of good faith and fair dealing in every employment contract made." *Jordan v. Town of Milton*, 2013 WL 105319, at *12 (D. Del.). However, this "covenant limits at-will employment only in very narrowly defined categories." *E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 441 (Del. 1996). There are only four instances where a claim based on the breach of this covenant are actionable: (i) where the termination violated public policy; (ii) where the employer misrepresented an important fact and the employee relied thereon either to accept a new position or remain in a present one; (iii) where

the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination. *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000) (*citing E.I. DuPont de Nemours & Co*., 679 A.2d at 442-44). To satisfy his burden in this case, Plaintiff must show that facts of record support a reasonable inference that Defendant's actions included "an aspect of fraud, deceit or misrepresentation." *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 101 (Del. 1992). Every employment contract includes an implied covenant of good faith and fair dealing. *Id*. Breach of this implied covenant, however, requires bad faith; an aspect of fraud, deceit or misrepresentation by the employer. *Id.* An employer acts in bad faith by inducing "another to enter into an employment contract through actions, words, or withholding of information, which is intentionally deceptive in some way material to the contract. *Id*. Such conduct constitutes "an aspect of fraud, deceit, or misrepresentation. *Id.*

Clearly, Plaintiff has alleged adequate facts that show Defendant's actions included fraud or deceit, or that Defendant used its superior bargaining power to deprive Plaintiff of identifiable compensation. The live Complaint alleges that Defendant made misrepresentations about whether Plaintiff was employed, would be reimbursed, and compensated. The fraud and deceit in failing to compensate Plaintiff while making numerous representations that he would be compensated, yet deprived Plaintiff of compensation for his ongoing services. Therefore, Defendant has proper notice of Plaintiff's breach of covenant of good-faith and fair dealing claim under Delaware law, only plead in the alternative if Delaware law applies to his employment. Therefore, we respectfully ask this Court to **DENY** Defendant's 12(b)(6) Motion as to the breach of covenant of good-faith and fair dealing as **MOOT** until it is determined whether the choice of law provision of Delaware will be applicable to Plaintiff's employment agreement.

2) <u>VIOLATION OF DELAWARE STATE WAGE LAWS</u>

As stated above, Plaintiff's Delaware wage claims are being asserted in the alternative, if it is uncovered that Delaware law applies to Plaintiff's employment. Defendant makes the same frivolous arguments that because Plaintiff is a highly compensated employee he is exempt from the wage laws in Delaware. Dkt. 11. However, Delaware does not define the criteria for an employee to be deemed a bona fide executive employee. DE Statute 19-901(e)(3); allows the standards set forth by the federal Fair Labor Standards Act regarding executive employees to provide reasonable guidance. Here, as stated above, Plaintiff received no compensation, during the relevant period [July 2022 – present], which negated any and all exemptions under the FLSA. If it is uncovered that Plaintiff employment is governed by Delaware law, Plaintiff asserts that there are viable wage claims available under Delaware law for Defendant's failure to pay minimum wages. 19 DEL. C. §§ 901 TO 914; 19 DEL. C. §§ 1101 TO 1115. Therefore, we respectfully ask this Court to **DENY** Defendant's 12(b)(6) Motion as to the Delaware state wage claims as **MOOT** until it is uncovered whether a choice of law provision exists that governs Plaintiff's employment.

G. <u>PLAINTIFF CONCEDES THE DISMISSAL OF TORTIOUS INTERFERENCE CLAIM AGAINST DEFENDANT.</u>

Plaintiff concedes the dismissal of his tortious interference claim against Defendant **only if Delaware law does not apply to the employment agreement** given that Plaintiff is alleging Defendant and its corporate representatives interfered with the agreement to compensate Plaintiff. In Texas, to be legally capable of tortious interference, the defendant must be a stranger to the contract with which he allegedly interfered. *Id*. at 794–95. Therefore, Plaintiff concedes this Court's dismissal of **<u>only</u>** the tortious interference claim against Defendant if Texas law applies.

In Delaware, to state a claim for tortious interference with a contract, a plaintiff must allege a breach of that contract. *Chapter 7 Tr. Constantino Flores v. Strauss Water Ltd.*, 2016 WL

5243950, at *10 (Del. Ch. Sept. 22, 2016) (To state a claim for tortious interference, a plaintiff must show "(1) a valid contract, (2) about which the defendants have knowledge, (3) an intentional act by the defendants that is a significant factor in causing the breach of the contract, (4) without justification and (5) which causes injury." (quoting *Irwin & Leighton*, *Inc*. *v*. *W.M. Anderson Co*., 532 A.2d 983, 992 (Del. Ch. 1987)) (citing Restatement (Second) of Torts § 766 (1979))); *id*. at *11 ("A party cannot claim a tortious interference with contract when there has been no breach of that contract."). Here, Plaintiff has shown a valid contract [employment agreement] about which Defendant has knowledge of the agreement to employ Plaintiff. Defendant committed an intentional act when it failed to compensate and reimburse Plaintiff according to the employment agreement and promise to pay, without any justification; causing Plaintiff to suffer injuries, including loss of wages, diminished reputation, loss of earning capacity, to name a few. Because Plaintiff states an independent claim for breach of the Employment Agreement, and he alleges facts sufficient to support such a claim; Plaintiff has properly alleged a tortious interference claim under Delaware law. Thus, if this Court was to determine Delaware law applies to the employment agreement; Plaintiff asks this Court to **DENY** Defendant's 12(b)(6) Motion as to the tortious interference claim under Delaware law.

## IV. CONCLUSION & PRAYER

Other than Plaintiff's tortious interference claim [under Texas law], Defendant's Rule 12(b)(6) motion must be **DENIED** in its entirety. The affirmative defenses raised by Defendant are fact-intensive inquiries that Defendant believes the facts to be "mere conclusions," which cannot be resolved at the pleading stage, therefore, Defendant's 12(b)(6) motion must be **DENIED** as to all claims, except Plaintiff's tortious interference claim, which Plaintiff has conceded in this Motion unless the Court determines Delaware law applies.

Respectfully Submitted,

**Eddie Hodges, Jr.**
Texas Bar No.: 24116523
Federal Bar No.: 3479748
**Alfonso Kennard, Jr.**
Texas Bar No. 24036888
Federal I.D. No. 713316
Kennard Law PC
5120 Woodway Dr., Suite 10010
Houston Texas 77056
Main: (713) 742-0900
Fax: (713) 742-0951
Email: alfonso.kennard@kennardlaw.com
Email: eddie.hodges@kennardlaw.com
Email: filings@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on this 13th day of February 2024, a true and correct copy of this Response in Opposition to Defendant's 12(b)(6) Motion was filed with the Court using the Court's CM/ECF system and served on Defendant's counsel.

**ANDREW R. KORN**
State Bar card number: 11683150
Mailing address:
Andrew R. Korn, PLLC
4221 Avondale Avenue
Dallas, Texas 75219
E-mail address: akorn@receiverandrewkorn.com
Telephone number: (214) 521-0500
Attorney for Lottery.com

Eddie Hodges Jr.