**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **CARL WELLS** | § | |
| | § | |
| ***Plaintiff,*** | § | **CASE NO. 1:23-CV- 01081-RP** |
| | § | |
| **v.** | § | |
| | § | |
| | § | |
| **LOTTERY.COM, INC. d/b//a** | § | |
| **SPORTS.COM, INC.** | § | |
| | § | |
| ***Defendant.*** | § | |

---

**PLAINTIFF'S *CORRECTED* RESPONSE IN OPPOSITION TO
DEFENDANT'S RULE 12(B)(6) MOTION TO DISMISS**

---

**TO THE HONORABLE U.S. DISTRICT COURT JUDGE**:

COMES NOW, Carl Wells, ("Plaintiff") files this response in opposition to Defendant Lottery.com d/b/a Sports.com d/b/a AutoLotto, Inc.'s 12(b)(6) Motion to Dismiss, filed on July 24, 2024. The Court denied Plaintiff's motion to exceed pages, and have allowed Plaintiff five (5) additional pages, and Plaintiff will respectfully show the Court as follows:

## I. LEGAL STANDAD UNDER RULE 12(B)(6)

1. Rule 12(b)(6) motions to dismiss are disfavored and rarely granted. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009). Generally, the court may consider only the allegations in the complaint and any attachments thereto in ruling on a Rule 12(b)(6) motion. If a motion to dismiss refers to matters outside the pleading it is more properly considered as a motion for summary judgment. *See* FED. R. CIV. P. 12(d). However, the court may consider documents attached to a motion to dismiss under 12(b)(6); if the documents are referenced in the Plaintiff's

complaint and central to the Plaintiffs's claims. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000); *King v. Life Sch.*, 809 F. Supp. 2d 572, 579 n.1 (N.D. Tex. 2011).

2. Defendant asserts it has dispositive authority on two of Plaintiff's causes of action, fraud, and breach of contract. **Dkt 36 ¶ 6.** In response to Plaintiff's fraud claim, Defendant cites *Turner v. Harvard MedTech*, a federal case interpreting fraud under Neveda law, which states that fraud allegations must specifically identify names of individuals who made the misrepresentation, that those individuals had authority to speak for the corporation. **Dkt 36 ¶** 7.

a. Here, Plaintiff identifies several executive officers, board members, and the chairman of the board, by name, who either have actual authority or apparent authority under Texas law to bind Defendant to its misrepresentations and contracts. **Dkt. 35 ¶** 42, 43. *Elaazami v. Lawler Foods, Ltd*., No. 14-11-00120-CV (Tex. App. Feb. 7, 2012) (Texas law recognizes that a company's placement of an officer or employee in a certain position will provide the agent with apparent authority to bind the company in usual, customary, or ordinary contracts that a reasonable person would view as being consistent with an agent's scope of authority in that position). Moreover, Plaintiff has identified Ryan Dickinson, as the President and COO; who was in certain position and authority to bind Defendant to Plaintiff's employment agreement as evidenced by Defendant compensating Plaintiff according to the agreed terms after he accepted employment with Defendant in March 2022.

3. Defendant asserts that on Plaintiff's breach of contract claim, the SAC does not: (1) state that Lottery.com's board of directors directly authorized Plaintiff's employment agreement; or (2) allege how Ryan Dickinson had authorization to make the "employment agreement" on Lottery's behalf. **Dkt 36 ¶** 8.

a. Here, Plaintiff has elected to file suit for common law breach of contract for unpaid wages. **Dkt. 35 ¶** 69. *Bloch v. Dowell Schlumberger Inc*, 925 S.W.2d 301 (Tex. App.—Houston [1st Dist.] 1996, no writ); *Nart v. Open Text Corp*., A-10-CA-870 LY (W.D. Tex. Aug. 29, 2011)(An employee may pursue a common law breach of contract claim without exhausting administrative remedies). "This cause of action prevents companies from refusing to pay an employee wages and escaping liability if the employee did not have an employment contract and failed to file a Payday claim within six months." *See Nart v. Open Text Corp*., A-10-CA-870 LY (W.D. Tex. Aug. 29, 2011); (*Kitchen v. Frusher*, 181 S.W.3d 467, 474-76 (Tex. App.—Fort Worth, 2005 no pet.). Defendant does not make any

argument as to whether Plaintiff may pursue common law breach of contract, under Texas law, as an alternative remedial scheme because Plaintiff alleges he has been denied wages. *Igal v. Brightstar Information Technology Group, Inc*., 250 S.W.3d 78 (Tex. 2008). Moreover, Texas law recognizes that a company's placement of an officer or employee in a certain position will provide the agent with apparent authority to bind the company in usual, customary, or ordinary contracts. *Elaazami v. Lawler Foods, Ltd*., No. 14-11-00120-CV (Tex. App. Feb. 7, 2012); RESTATEMENT (THIRD) OF AGENCY § 3.03 cmt. e(4) (2006) ("If a corporation permits a vice president to exercise significant transactional functions and to make or appear to be in control of operational decisions, it creates a basis on which actual or apparent authority may arise."). Ryan Dickinson's position as President and COO would indicate to a reasonable person in Plaintiff's position that Ryan Dickinson had authority to offer employment to prospective employees on behalf of Lottery.com. *See Carter Grocer Co. v. Day*, 144 S.W. 365, 366-67 (Tex. Civ. App.—Fort Worth 1912, writ dism'd w.o.j.) (vice president with direct supervision over salespersons had apparent authority to enter into a one-year employment contract with a current salesperson; employee dealt with the agent frequently on matters of employment, and the company had on prior occasions paid the employee the salary promised to him by the agent); *see also Elliot v. Great Nat'l Life Ins. Co.*, 611 S.W.2d 620, 621-22 (Tex. 1981) (senior vice president of marketing had apparent authority to contract on behalf of the corporation for a subordinate employee's one-year employment agreement; employee made trips to meet with corporation's other employees at the request of the agent, and the corporation paid for the trips; the agent's communications with the employee facilitated the hiring of the employee); *See A. J. Anderson Co. v. Citizens' Hotel Co.*, 8 S.W.2d 702, 703, 705 (Tex. Civ. App.—Fort Worth 1928, writ ref'd) (affirming trial court's finding of implied authority for vice president and general manager of a company to bind the company in contract for stock subscriptions; evidence showed that board of directors conducted minimal business, the president of the company spent most of the time at a resort, and the vice president had primary management of the company).

4. Defendant asserts that Plaintiff's fraud claims do not allege that any of the people making the representations had authority to make them on behalf of Lottery.com because agency is never presumed. **Dkt 36 ¶** 9. Defendant states Plaintiff failed to allege facts supporting reasonable reliance on any representation as authorized by Lottery.com and states without fact supporting agency, Plaintiff failed to plausibly establish fraud or contract claims. *Id*.

a. Here, Plaintiff identifies several executive officers, board members, and the chairman of the board, who either have actual authority or apparent authority under Texas law to bind Defendant to its misrepresentations and contracts. **Dkt. 36 ¶** 32, 33. *Elaazami v. Lawler Foods*, (Texas law recognizes that a company's placement of an officer or employee in a

certain position will provide the agent with apparent authority to bind the company in usual, customary, or ordinary contracts that a reasonable person would view as being consistent with an agent's scope of authority in that position). Defendant cites *Oblon*, which the court found that Oblon's agency must be plead with particularity under Rule 9(b), given that there were multiple entities, and it was unclear of the agent's authority to act. *Burback v. Oblon*, 2022 U.S. Dist. LEXIS 128867, at *26-28 (E.D. Tex. July 20, 2022). Unlike here, the individuals identified all worked directly for Defendant, as executive officers, board members, and the chairman of the board. Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal that clothe the agent with the indicia of apparent authority. *See NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952–53 (Tex.1996) (per curiam); *Southwest Title Ins. Co. v. Northland Bldg. Corp.*, 552 S.W.2d 425, 428 (Tex.1977) ("Only the conduct of the principal, leading one to suppose that the agent has the authority he purports to exercise, may charge the principal through the apparent authority of an agent."). It can be reasonably inferred that the COO, CEO, CLO, CFO, compliance director, Chairman of the Board, and other board members' leads one to suppose that each agent of Defendant had the authority he/she purported to exercise. Moreover, the Northern District of Texas opined that the allegation of agency is not intertwined with the fraud allegation that it is part of the fraud itself, therefore, the Plaintiffs only needed to satisfy Rule 8(a). *See Patel v. Pacific Life Insurance Company*, CIVIL ACTION No. 3:08-CV-0249-B (N.D. Tex. May 22, 2009)(finding Plaintiffs allege an actual agency relationship between Cushner and Pacific Life, and that Pacific Life is thus vicariously liable for Cushner's alleged torts and that allegation is not so intertwined with the fraud allegation that Plaintiffs only needed to satisfy Rule 8(a)).

5. Plaintiff asserts there is no legal basis to support Defendant's 12(b)(6) Motion, and it should be **DENIED IN ITS ENTIRETY** as to Plaintiff's (i) FLSA violation claim, (ii) breach of contract claim; (iii) fraud claim; and (v) unjust enrichment/quantum meruit claim.

## II. ARGUMENT AND AUTHORITIES

### A. PLAINTIFF HAS ADEQUATELY PLED A FLSA CLAIM UNDER 29 U.S.C. § 206 (A) BASED ON DEFENDANT'S FAILURE TO PAY MINIMUM WAGES

6. Defendant alleges that the Employment Agreement was mutually drafted and Plaintiff was employed in an **exempt role** of Vice President of Information Technology. **Dkt. 36 ¶** 11.

a. Plaintiff has alleged that he is still employed and has continued to be employed as of this filing, so there is no factual dispute as to whether Plaintiff has pled he has completed work from July 8, 2022 to present. **Dkt. 35 ¶** 42, 43, 52. Plaintiff alleges he lost any exemption status under the FLSA when he was not regularly compensated $684 per week as required by the FLSA. **Dkt. 35 ¶** 52. *Helix I*, 15 F.4th at 293; *accord* 29 C.F.R. § 541.601(b)(1) (explaining that "total annual compensation must include at least $684 per week paid on a salary or fee basis"); *Garcia v. Pegaso Energy Servs*., 1:23-CV-790-DII (W.D. Tex. Apr. 11, 2024)(Honorable Judge Lane recommending the denial of a 12(b)(6) motion on a FLSA claim because the allegations do not conclusively establish an affirmative defense). Similarly, to *Garcia*, the allegations conclusively establish that Plaintiff lost his exemption status during the relevant period because he was not regularly compensated $684 per week as required by the FLSA.

7. In the Motion, Defendant cites *Miller v. Infinite Percent Partners, LLC*, a Northern District of California case, which found the Plaintiff did not even attempt to allege she was a nonexempt employee. **Dkt. 37 ¶** 11; *Miller v. Infinite Percent Partners, LLC*, 2021 U.S. Dist. LEXIS 114026, at *4-7 (N.D. Cal. June 17, 2021). Defendant further asks this Court to reject Plaintiff's assertion that he is not exempt under the FLSA because he was compensated less than $684 during the relevant period based on a California state case interpreting the FLSA as "not mandating that employers pay employees any particular salary levels if they are exempt." *Arambula v. Irvine Unified Sch. Dist*., 2016 Cal. Super. LEXIS 32777, at *2 (Cal. Super. Ct. October 21, 2016).

a. Defendant fails to cite relevant case law in the Fifth Circuit that would be relevant. What distinguishes this case from *Miller* and *Arambula* is that Plaintiff has alleged that he was a

nonexempt employee from July 22, 2022 to present. Ironically, in *Miller* the Plaintiff pleaded she received a $5,000 payment during the three-month period, which exceeded federal minimum wage requirements. *Miller* at fn. 2. Plaintiff has pleaded he received no payments, which is clearly distinguishable from *Miller*. *See Garcia v. Pegaso Energy Servs*. (Honorable Judge Lane recommending the denial of a 12(b)(6) motion on a FLSA claim because the allegations do not conclusively establish an affirmative defense). Plaintiff has attached a FLSA fact sheet to his complaint that explicitly state "Reductions in the predetermined salary of an employee who is exempt under Part 541 of the Department of Labor's regulations will ordinarily cause a loss of the exemption" or "FLSA section 13(a)(1) requires payment of at least $684* per week on a "salary" basis for those employed as exempt executive, administrative, or professional employees." **Dkt. 35**. ¶ 52; FLSA Fact Sheet #70. As with all exemptions to the FLSA, the employer's claim of exemption must be construed narrowly and in favor of the employee. *See Brennan v. Greene's Propane Gas Service, Inc.*, 479 F.2d 1027, 1032 (5th Cir. 1973). Determination of professional status is guided by regulations issued by the Secretary of Labor and the Administrator of the Wage and Hour Division, which require an employee to earn more than a minimum weekly salary of $684 to be considered exempt. Thus, Plaintiff loss any exemption status (regardless of the "exemption status" in the Employment Agreement) once he was not paid $684 per week during the relevant period [July 22, 2022 – present].

8. Plaintiff's Second Amended Complaint specifically states:

> **Plaintiff is not an exempt employee under the FLSA because he was compensated less than $684 per week**, (no administrative or executive exemption applies). Specifically, **Plaintiff received no compensation during the above-mentioned time period** and continues to not receive compensation for his work performed. **Dkt. 35** ¶ 52, 56, 58.

9. Plaintiff's SAC asserts that from July 22, 2022 until present – Plaintiff has received "no compensation," which is $684 less than what he is required to be compensated to be considered exempt under the FLSA. Defendant has not adequately asserted any evidence that Plaintiff did in fact receive at least $684 per week from [July 2022 – present], simply because Plaintiff has continued to complete work for Defendant on a day-to-day basis and has not received any compensation for over a year and a half.

10. At the pleading stage, it may be "premature" to rule that an FLSA exemption forecloses a plausibly stated § 207(a)(1) claim. *White v. U.S. Corr., LLC,* 996 F.3d 302, 310 (5th Cir. 2021). This is so, because "the 'determination as to whether an employee is exempt under the [FLSA] is

primarily a question of fact' typically better suited for summary judgment." *Id*. (quoting *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)). It is too premature to determine and Defendant has failed to satisfy its burden by a preponderance of evidence that any exemption forecloses plausibility that Plaintiff did not receive the minimum $684 per week during the relevant time period [July 22, 2022 to present] to prove that an FLSA exemption applies.

11. Defendant has only cited cases in California to support its stance that this Court should dismiss Plaintiff's FLSA claims for failure to state a claim. And in the California case, the Plaintiff was paid $5,000 during the relevant period (which surpassed the minimum weekly requirement and there was no allegation that the payment did not surpass the requirement). *Miller v. Infinite Percent Partners, LLC*, (N.D. Cal. June 17, 2021) Plaintiff has alleged minimum wage violations from July 2022 to present and has alleged during the relevant period he was a non-exempt employee because he received less than $684 per week during the relevant period. Under the FLSA, nonexempt employees must be paid a legally prescribed minimum hourly wage. 29 U.S.C. § 206(a)(1).

12. At the pleading stage, in *Rodriguez v. Gold & Silver Buyers, Inc.,* Civ. A. No. 4:12-CV-1831, 2013 WL 5372529, at *3 (S.D. Tex. Sept. 24, 2013), the Southern District of Texas court relied on *Hoffman v. Cemex, Inc.*, No. Civ. A. H-09-3144, 2009 WL 4825224 *3 (S.D. Tex. Dec. 8, 2009), and *Qureshi v. Panjwani*, CIVIL ACTION No. H-08-3154 (S.D. Tex. June 9, 2009) ("finding plaintiffs' allegations that they were nonexempt, regularly worked more than forty hours per week, and were not paid time-and-a-half to be factual allegations and not legal conclusions") to deny a Rule 12(b)(6) motion. Similarly, here, it is too premature to rule on Plaintiff's exemption status and his allegation that he was nonexempt is a factual allegation and not a legal conclusion. Based on the decisions of sister federal courts in Texas and the Fifth Circuit, this Court should

**deny** Defendant's 12(b)(6) Motion as to Plaintiff's FLSA minimum wage violation claims under 29 U.S.C. § 206(a)(1) et seq. *White v. U.S. Corr., LLC,* at 310 (5th Cir. 2021); *Hoffman v. Cemex, Inc.,* at *3 (S.D. Tex. Dec. 8, 2009); *Qureshi v. Panjwani,* (S.D. Tex. June 9, 2009).

13. Plaintiff lost any exemption he had in July 2022, when Defendant failed to compensate Plaintiff at minimum $684 per week, which Plaintiff has adequately alleged he received no compensation during this time. *Qureshi v. Panjwani,* CIVIL ACTION No. H-08-3154 (S.D. Tex. June 9, 2009). The burden of establishing an exemption remains with the employer, who must do so by a preponderance of the evidence. *Adams v. All Coast, L.L.C*., 988 F.3d 203, 206 (5th Cir. 2021). Defendant has failed to allege that Plaintiff was in fact paid more than $684 per week during the relevant time period [July 22, 2022 to present] to prove that an FLSA exemption applies.

14. Plaintiff has adequately alleged he received no compensation for any and all weeks he performed work for Defendant during the relevant period [July 2022 to present]. Plaintiff's allegation provides fair notice that he lost any exemption status during the relevant period and he was a nonexempt employee who continued to work for Defendant. Defendant has not satisfied its burden by a preponderance of evidence that an exemption applies, and any argument is premature. Plaintiff received no weekly compensation; thus no exemption applies during the relevant time period [July 2022 to present], and Defendant's request that this Court dismiss the FLSA claim under Rule 12(b)(6) should be **DENIED** because it can be reasonably inferred that Plaintiff has alleged he was not exempt because no exemption applies to employees who receive $0 compensation per week during the relevant period, in which he completed worked and worked many hours, which shall be further determined through discovery.

B. PLAINTIFF HAS ADEQUATELY PLED A BREACH OF CONTRACT CLAIM TO SURVIVE A 12(B)(6) MOTION.

15. Defendant alleges that Plaintiff had to clearly and specifically allege an express agreement

and Plaintiff failed to do so. Defendant cites *Sapp v. Chamberlain Coll. of Nursing*, 2020 U.S. Dist. LEXIS 120390, at *14 (S.D. Tex. July 9, 2020) stating that Texas law will not allow a plaintiff to use bare allegations of fraud to circumvent the at-will nature of an employment relationship. **Dkt. 36** ¶ 14. Defendant states that the Employment acknowledges that Plaintiff's "employment with Lottery.com will be at will and for no specific period." **Dkt. 36** ¶ 15.

a. Defendant incorrectly analyzes *Sapp's* applicability to this case. In *Sapp*, the Court found that at-will employees may not bring fraud claims based on **the termination of their employment**. *Sapp v. Chamberlain Coll. of Nursing*, CIVIL ACTION No. 4:19-CV-2076 (S.D. Tex. July 9, 2020); citing *Sawyer v. E.I. Du Pont De Nemours and Co*., 754 F.3d 313, 316 (5th Cir. 2014) ("The non-covered employees [for whom there is no collective bargaining agreement] are at-will employees who, under Texas law, may not bring fraud claims for the termination of their employment."). The at-will nature of Plaintiff's employment does not allow Defendant to escape breach of contract claims based on unpaid wages, which is separate and distinct from a breach of contract or fraud claim based on at-will termination. Here, Plaintiff has presented an express employment contract that created contractual obligations for both parties to perform. Plaintiff has alleged Defendant has failed to perform, which a at minimum, creates a quasi-contract or implied contractual obligations, similar to *Nart*. *Nart v. Open Text Corp*., A-10-CA-870 LY (W.D. Tex. Aug. 29, 2011)(denying 12(b)(6) on breach of quasi-contract claims for unpaid wages).

16. Defendant alleges the SAC fails to allege that Lottery.com "approved in advance" any expenses, or that Plaintiff complied with the requirement to "provide Lottery.com with (3) three vendor quotes… for such services." citing *Shipping & Fin., Ltd. v. Aneri Jewels LLC,* 2019 U.S. Dist. LEXIS 181780, at *9 n.1 (S.D.N.Y. Oct. 21, 2019*)*. **Dkt. 36** ¶ 16.

a. Here, Plaintiff has alleged that he was not reimbursed $15,710 and that he gave notice to the CEO, CFO, and COO that he purchased a home and he provided Lottery.com with the requisite vendor quotes. **Dkt. 35** ¶ 10, 48, 66. It is unclear how *Shipping* is applicable, given that the case analyzes breach of contract under New York law. Plaintiff has alleged that he has fully performed under the Employment Agreement, which can liberally be construed in his favor that Plaintiff did in fact comply with his contractual obligations to provide three vendor quotes and allowed Lottery.com the right to obtain additional quotes

or select a vendor of their choosing to pay the vendor directly. **Dkt. 35 ¶** 10, 48, 66.

17. Defendant alleges that Plaintiff was "constructively terminated" when he did not receive the first bi-weekly pay period and Plaintiff knew "immediately and continually that he would only be paid … if the fortune of Lottery.com turned around." citing *Traweek v. Global Solutions & Logistics LLC*, 2015 U.S. Dist. LEXIS 98098, at *15 (N.D. Ala. July 28, 2015). **Dkt. 36 ¶** 17. Defendant also attempts to confuse the court stating that Plaintiff was constructively discharged (evidenced by cases analyzing employment under Title VII) and has no enforceable contract for wages after that first unpaid two-week pay period. *Id.*

a. Plaintiff has alleged that he was not "constructively terminated" and given written and oral notice that he was not furloughed at any point during his employment. **Dkt. 35 ¶** 17. Plaintiff has alleged that he continues to be employed and in the alternative has brought unjust enrichment/quantum meruit claims if the express Employment Agreement is considered not enforceable. Moreover, Plaintiff has alleged on multiple occasions that Defendant made misrepresentations that Plaintiff would be paid in full for all work he has completed since his last payroll. **Dkt. 36 ¶** 75. There is a genuine factual dispute as to whether Plaintiff had actual knowledge of some type of "constructive discharge;" however, these arguments on a 12(b)(6) motion are misplaced, and are better suited after sufficient discovery. Moreover, in Texas, the "Payday Law," provides an alternative remedial scheme for workers who have been denied wages. *See Igal*, 250 S.W.3d at 87; *Hull v. Davis*, 211 S.W.3d 461, 464 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Plaintiff has produced some express employment agreement that creates express obligations for performance; but in the alternative Plaintiff has pled unjust enrichment/quantum meruit claims. *Nart v. Open Text Corp*., at *4 (W.D. Tex. Aug. 29, 2011) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000)). "Nevertheless, 'a party to a contract may seek alternative relief under both contract and quasi-contract theories.'" *Woodcock v. Chase Home Fin., LLC*, Civ. A. No. H-11-1199, 2012 WL 393260, at *3 (S.D. Tex. Feb. 3, 2012) *see also Tatum v. Tatum*, 606 S.W.2d 31, 33 (Tex. App.—Corpus Christi 1980, no writ) ("[T]here certainly is nothing to prevent plaintiff from pleading alternative theories of express contract and [unjust enrichment]."). Plaintiff has sufficiently alleged that the Employment Agreement is an enforceable contract when it was signed by Plaintiff and created obligations for Plaintiff to perform work on behalf of Defendant and in return Defendant would compensate Plaintiff based on the express compensation terms. These obligations create express obligations, or at minimum, implied contracts, or quasi-contractual obligations to pay Plaintiff wages. Courts have found these claims prevent companies from refusing to pay an employee wages and escaping liability. *See Kitchen v. Frusher*, at 474-76 (Tex. App.—Fort Worth, 2005 no pet.) (reversing a jury verdict that denied an employee wages under quantum meruit when the employer failed to pay her wages after she performed compensable services without an express contract).

18. Here, Plaintiff has filed a breach of contract lawsuit rather than a wage claim with the TWC. Plaintiff has raised a reasonable expectation that discovery will reveal evidence sufficient to state a claim for breach of contract or quasi-contract. Moreover, Texas law provides employees who are claiming they have been denied wages to file breach of contract claims in district court. *See Douglass v. Williams*, A-11-CV-416 LY at *6 (W.D. Tex. May. 23, 2012) (denying motion for judgment on pleadings). Defendant's 12(b)(6) motion should be denied because Plaintiff has exercised his rights to file a breach of contract claim under Texas law because he was denied wages. Because Plaintiff was promised wages in return for his work/services, a valid contract existed or at minimum an implied quasi-contract existed. Plaintiff tendered performance by fulfilling services for Defendant. Defendant breached that contract by failing to pay Plaintiff once he tendered performance, and Plaintiff suffered damages as outlined in his SAC.

19. Defendant alleges that the Employment Agreement contains an entireties clause… and because Lottery.com made no promises to do anything else for Plaintiff, Lottery.com could not have breached any contract. *Buford v. Walton Tex., LP*, 2024 U.S. Dist. LEXIS 96877, at *15 (W.D. Tex. May 31, 2024). **Dkt. 36 ¶** 18.

a. It is unclear the argument that Defendant is attempting to argue. In *Buford*, the Court found bonus programs in the employment agreement were explicitly discretionary. The Court in *Buford* found that Plaintiff failed to plead Defendant breached the employment contract because the Defendant exercised their discretion power in choosing not to award the Plaintiff a bonus in excess of his negotiated salary. *Buford v. Walton Tex., LP*, 2024 U.S. Dist. LEXIS 96877, at *15 (W.D. Tex. May 31, 2024). The *Buford* Court does not address the applicability of an "entireties clause." This case is distinct from *Buford* because Defendant promised to compensate Plaintiff for performing work, which included reimbursements of personal expenses. Plaintiff in the alternative has pled an unjust enrichment and quantum meruit claim. A quasi-contract is not a true contract, but rather a legal obligation imposed for equitable reasons to prevent a party from obtaining an undue advantage. *See Fortune Production Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Plaintiff has presented enough facts surrounding Plaintiff's duties to infer that Plaintiff performed work on behalf of Defendant (from March 2022 to present); and Defendant has failed to compensate Plaintiff according to the agreed terms and customs, which were

practiced prior to July 22, 2022. Defendant has fair notice that contractual obligations exist, which include Defendant's obligation to compensate Plaintiff accordingly.

20. Defendant alleges that any contractual claim by Plaintiff for anything promised after the date of the alleged March 29, 2022, employment agreement" fails for lack of consideration. *Robnett v. BrightClaim, LLC*, 2020 U.S. Dist. LEXIS 162464, at *5 (S.D. Tex. September 4, 2020). **Dkt. 36 ¶** 19.

a. *Robnett* is a case decided on summary judgment standards and not applicable at this stage. Plaintiff has produced an express employment agreement and has alleged that Defendant has promised to compensate Plaintiff to perform work on behalf of Defendant, until Defendant or Plaintiff terminates the employment relationship. Plaintiff alleges the employment relationship is still ongoing as of this filing and Plaintiff has not been compensated for work he performed, which Defendant promised to pay. Plaintiff has provided fair notice of an employment relationship and has the right to file a breach of contract lawsuit rather than a wage claim with the TWC, under Texas law. *Igal*, 250 S.W.3d at 82; *Hull*, 211 S.W.3d at 464 (A worker has a choice either to file an administrative claim with the TWC or a common law breach of contract claim in district court).

21. Defendant does not address the issue that Plaintiff's claim for breach of the employment agreement, does not seek unpaid minimum wages or unpaid overtime compensation, and is not preempted by the FLSA because Plaintiff seeks damages for breach of contract above and beyond the FLSA's recovery of unpaid minimum and overtime wages, including but not limited to, contracted wages, vested bonuses, and reimbursements. **Dkt. 36 ¶** 60. *Karna v. BP Corp. North America, Inc.*, 11 F. Supp. 3d 809 (S.D. Tex. 2014)(finding breach of contract claim not preempted because it was independent of the FLSA).

22. As stated above, Plaintiff has provided fair notice of an employment relationship and has opted to assert his right to file a breach of contract lawsuit rather than a wage claim with the TWC, under Texas law. *Igal*, 250 S.W.3d at 82; *Hull*, 211 S.W.3d at 464 (A worker has a choice either to file an administrative claim with the TWC or a common law breach of contract claim in district court). Plaintiff has alleged that there may exist some employment agreement, but in the alternative

has pled unjust enrichment claims. Similarly, to *Nart* this Court should **deny** Defendant's 12(b)(6) Motion as to Plaintiff's breach of contract or quasi-contract/unjust enrichment claim. *Nart v. Open Text Corp*., A-10-CA-870 LY at *7 (W.D. Tex. Aug. 29, 2011).

C. PLAINTIFF HAS ADEQUATELY PLED A FRAUD CLAIM UNDER FED. R. CIV. P. 9(B).

23. Defendant asserts that the misrepresentations that Plaintiff attributes to Defendant are not actionable: as either, non-actionable legal opinion; statement made after expense incurred; no inducement; no reliance; too vague or general; statement was conditional on future events and uncertain; statement made after representations complained about; question asked; not a statement of existing fact or a promise; general and vague statement was conditional on future events and uncertain; or made during time period Plaintiff was adverse to Lottery.com on the claims made in this case. **Dkt. 36** ¶ 20.

a. Defendant asserts that majority of the representations are not actionable because it was either conditional on future events or that Plaintiff did not detrimentally rely on any of the statements. First, Plaintiff has alleged that each representation listed in his SAC were false or made recklessly. **Dkt. 35** ¶ 77. Plaintiff has also alleged that he has relied on each representation to his detriment and has suffered damages, including but not limited to, liquidating his 401(k) and loss of wages. **Dkt. 35** ¶ 77, 79, 80. Second, a promise to do an act in the future is not actionable fraud *unless* it is "made with the intention, design, and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc*., 708 S.W.2d 432, 434 (Tex. 1986) (*citing Stanfield v. O'Boyle*, 462 S.W.2d 270, 272 (Tex. 1971)). Plaintiff has alleged that each of the misrepresentations were made falsely, deceptively, and with no intentions to perform. **Dkt. 35** ¶ 77, 78. Plaintiff has provided Defendant with sufficient facts to demonstrate that Defendant promised him

compensation and reimbursements (if he continued to perform work for Defendant) while knowing it would never do so. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) ("An expression of an opinion as to the happening of a future event may also constitute fraud where the speaker purports to have special knowledge of facts that will occur or exist in the future."). It can be reasonably inferred that Defendant's executive members, board members, a chairman of the board's statements purport to have special knowledge of facts that will occur in the future, and Plaintiff's reliance of that special knowledge or opinion to his detriment (which were known to be false) gives fair notice that these misrepresentations constitutes actionable fraud.

24. Defendant also asserts that Plaintiff's failure to provide "specific dates" and "Where" section is inadequate because it lists various mediums, which Defendant asserts require dismissal under Rule 9(b) . **Dkt. 36 ¶** 20.

a. Plaintiff has alleged multiple dates, some specific, and some ranging on dates based on the fact that the statement was made multiple times. All statements, except Robert Stubblefield's statement, were made prior to Plaintiff filing this lawsuit. Plaintiff has alleged:

i. **Katie Lever, CFO** made the statement on July 23, 2022, and on multiple occasions in July and August 2022. **Dkt. 35 ¶** 19, 21, 75;
ii. **Ryan Dickinson, CEO** made the statement(s) in March 29, 2022 and May 27, 2022 that Plaintiff would be reimbursed for personal expenses. **Dkt. 35 ¶** 9, 13, 75;
iii. **Richard Kivel, Chairman of Board** made the statement on July 6, 2022 (mistakenly states August 2022 – **Dkt. 35 ¶** 14, 75;
iv. **Dennis Ruggeri –** made the statement on December 12, 2022. **Dkt. 35 ¶** 34, 75.
v. **Matt McGahan, Chairman of Board and CEO** made the statement on March 29, 2023 and on multiple occasions in March 2023. **Dkt. 35 ¶** 38, 75;
vi. **Sohail Quraeshi, CFO** made the statement on October 11, 12, 2022. **Dkt. 35 ¶** 26, 75;
vii. **Amar Ali, CLO** sent multiple emails and or calls from March 2023 – July 2023, discovery will uncover each instance Amar Ali asked Plaintiff to complete work and assured that payroll would restart. **Dkt. 35 ¶** 75;
viii. **Harry Dhaliwal, CFO** made the statement on July 6, 2022. **Dkt. 35 ¶** 14, 75;

ix. **Robert Stubblefield, CFO** made the statement on or around June 6, 2024. **Dkt. 35 ¶** 75.

These facts provide specific fair notice of "when" the alleged false representations were made, which include dates prior to the parties becoming adversarial. Plaintiff has alleged "where" that these statements were made verbally, or by email, text, or Slack messages. Plaintiff alleges that these statements were made through multiple mediums and has specifically provided facts as to when and what was stated in the communications. Discovery will uncover the medium for each specific representation, while some representations were made on multiple occasions using different methods of communication. Plaintiff has provided Defendant with fair notice as to where the communications were made and discovery will likely uncover all the mediums used.

25. Defendant asserts that Plaintiff's complaints about representations occurring after Plaintiff's employment (March 29, 2020) fail to state a plausible claim and must be dismissed. *Halper v. Univ. of the Incarnate Word*, 90 S.W.3d 842, 847 (Tex. App.—San Antonio 2002, no pet.); *Studer v. Moore*, 2021 Tex. App. LEXIS 1209, at *4 (Tex. App.—Houston [14th Dist.] Feb. 18, 2021, no pet.) ("[A]n at-will employee cannot bring fraud claims that depend on continued employment."). **Dkt. 36 ¶** 21.

a. Here, Defendant attempts to confuse the Court by stating Plaintiff's at-will status precludes him from bringing any fraud claim. Defendant cites cases that stipulate that an at-will employee's fraud claims cannot be brought on the basis of **continued employment**. *See Halper*; *Studer*. Texas Courts have found an "at will" employee is barred from bringing a cause of action for fraud against his employer, but only based upon the employer's decision to discharge the employee. *See Jones v. Legal Copy, Inc.*, 846 S.W.2d 922, 925 (Tex.App. — Houston [1st Dist.] 1993, no writ) (at-will doctrine effectively bars contract and tort claims based on the decision to discharge an at-will employee). Here, Plaintiff is not bringing his fraud claim based upon Defendant's decision to discharge him, because Plaintiff has alleged he has remained employed as of this date. A Texas Appeals Court has held that "the cause of action for fraud, which encompasses misrepresentations made before employment, as well as those made during employment, is not barred by the employment at will doctrine." *Offshore Petroleum Divers v. Cromp*, 952 S.W.2d 954 (Tex. App. 1997); *Sawyer v. E I DuPont De Nemours & Co.*, 689 F.3d 463, 468 (5th Cir. 2012). Another case allowing a fraudulent misrepresentation cause of action by an employee against an employer during an at-will employment relationship is *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432 (Tex. 1986). There, the court held there was sufficient evidence of the employer having made a promise to do an act in the future with no intention of performing the act. *Id*. Therefore, Defendant's argument that Plaintiff's at-will status precludes him from bringing fraud claims, under Texas law, is misplaced.

26. Defendant asserts that any representations made after Plaintiff's claims arose (March 30,

2023) fail to state a plausible claim because representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context. *AKB Hendrick, LLP v. Musgrave Enters.*, 380 S.W.3d 221, 232 (Tex. App.—Dallas 2012, no pet.). **Dkt. 36 ¶** 22.

a. Here, in Texas, it is true that litigation is considered to be "adversarial" in the context that parties cannot rely on representations made in an adversarial context. Defendant's attempt to state that some of the damages Plaintiff's seek are from after the action was filed, is not related to whether representations were relied on in an adversarial context. Moreover, Defendant asserts the adversarial date began when Plaintiff initiated arbitration on March 30, 2023. However, Defendant did not participate in the proceedings and the adversarial context did not begin until Plaintiff filed this lawsuit and Defendant appeared. The lawsuit was filed on September 11, 2023. Here, all the of representations, except for one, occurred prior to September 11, 2023, or even March 30, 2023, which is the representation made by Robb Stubblefield in June 2024. **Dkt. 35 ¶** 75. Outside of Robb Stubblefield's representation, each representation was made between March 2022 – September 11, 2023, (before the lawsuit was filed) therefore, these actionable representations were not made in the adversarial context.

27. Defendant asserts Plaintiff's SAC negates reasonable reliance because (1) Plaintiff failed to adequately plead at-will employment. **Dkt. 36 ¶** 23.

a. Again, Defendant's at-will employment arguments are misplaced because Plaintiff's reliance is not based continued employment but based on misrepresentations that Plaintiff would receive compensation and reimbursements from Defendant based on representations that were made during his employment, which he relied on to his detriment causing him to suffer damages, above and beyond the wages and expenses he was owed. A Texas Appeals Court has held that "the cause of action for fraud, which encompasses misrepresentations made before employment, as well as those made during employment, is not barred by the employment at will doctrine." *Offshore Petroleum Divers v. Cromp*, 952 S.W.2d 954 (Tex.

App. 1997); *Sawyer v. E I DuPont De Nemours & Co.*, 689 F.3d 463, 468 (5th Cir. 2012).

28. Defendant argues that because Plaintiff's fraud claims revolve around his employment agreement the claim is barred by the economic loss rule. **Dkt. 36 ¶** 24.

a. Plaintiff has alleged that the economic loss rule does not bar his fraud claim. **Dkt. 35 ¶** 79. *Reservoir Sys., Inc. v. TGS-NOPEC Geophysical Co.* , 335 S.W.3d 297, 308 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("Tort damages are recoverable for a fraudulent-inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract.").

29. Here, Plaintiff has adequately pled fraud claim fraud with the specificity as required by Rule 9(b). However, "other than in the situations expressly enumerated in rule 9(b), e.g., allegations of actual fraud, plaintiff must satisfy only the minimal requirements of rule 8(a)." *General Elec. Capital Corp. v. Posey*, 415 F.3d 391, 396-97 (5th Cir. 2005).

30. Rule 9(b) requires, the who, what, when, and why statements were fraudulent and what damages flow from the fraudulent actions. Here, Plaintiff the false representations alleged are as follows:

**WHO**:

1. **Katie Lever** – CLO/COO, Apparent Authority;
2. **Ryan Dickinson** – CFO, Apparent Authority;
3. **Richard Kivel** – Chairman of the Board, Actual Authority;
4. **Dennis Ruggeri** – CCO, Apparent Authority;
5. **Matt McGahan** – CEO/Chairman of Board/Director of Board, Actual Authority;
6. **Sohail Quraeshi** – CEO, Apparent Authority;
7. **Amar Ali** – CLO, Apparent Authority;
8. **Harry Dhaliwal** – CFO, Apparent Authority;
9. **Robert Stubblefield** – CFO, Apparent Authority

*Elaazami v. Lawler Foods, Ltd.*, No. 14-11-00120-CV (Tex. App. Feb. 7, 2012) (Texas law recognizes that a company's placement of an officer or employee in a certain position will provide the agent with apparent authority to bind the company in usual, customary, or ordinary contracts that a reasonable person would view as being consistent with an agent's scope of authority in that position). **Dkt. 36 ¶** 64.

**WHAT**:

1. "**the furlough was not applicable to Plaintiff**" (Katie Lever, CLO July 23, 2022) – Plaintiff alleges that this representation was false and made with the intention to induce Plaintiff to continue to work, but Defendant had no intentions to continue compensating Plaintiff but told him he was not furloughed to continue to perform work; knowing it was not going to compensate Plaintiff. Defendant's Q1 Form 10-Q continues to calculate Plaintiff's bi-weekly salary as General and Administrative expenses, even to this day, to make it appear that Plaintiff was or is being compensated in his position as EVP of Product. **Dkt. 35 ¶** 44. Plaintiff alleges he detrimentally relied on the representations that he was not furloughed which implied he would be compensated regularly for his work;

2. "**Plaintiff would be fully reimbursed for all out-of-pocket expenses**" and "**company couldn't get a new one (credit card) just yet because they were a gaming company and it was hard for a gaming company to get a credit card**" (Ryan Dickinson, CEO March 29, 2022, and May 27, 2022) – Plaintiff alleges that this statement of future action was false because Defendant had no intentions of compensating Plaintiff. Instead, Defendants stated they could not get a new credit card because it was hard for a gaming company, yet Defendant never intended to seek a new credit card or pay Plaintiff's out-of-pocket expenses. Plaintiff detrimentally relied on the false representations that he would be reimbursed, which caused him incur $34,231.84 in unreimbursed credit card charge plus an additional $22,768.59 in credit card interest. **Dkt. 35 ¶** 46;

3. "**Lottery.com was working to reimburse Plaintiff for the expenses that were not paid since May 6, 2022, but Lottery.com was waiting on confirmation of cash in the bank and a "cursory audit" of the financials**" (Richard Kivel Chairman of Board, & Harry Dhaliwal, CFO July 6, 2022) – Plaintiff alleges that this statement of future action was false because Defendant had no intentions of compensating Plaintiff because Defendant was not waiting on cash in the bank or a "cursory audit" of the financials. Defendant misled Plaintiff to believe Defendant was waiting on "cash" and a "cursory audit," implying payroll was incoming, yet never paid any of Plaintiff's expenses. Plaintiff detrimentally relied on the false representations that he would be reimbursed, which caused him incur $34,231.84 in unreimbursed credit card charge plus an additional $22,768.59 in credit card interest based on the representations. **Dkt. 35 ¶** 44;

4. "**The Company acknowledges its monetary debt to you and is working to springboard funding in order to pay it down. Unfortunately, paying down said debt is connected to the Company's continuing ability to revitalize itself, which it won't be able to do if it fails to fulfill the SEC subpoena. Your help with this matter would be greatly appreciated"** (Dennis Ruggeri, CCO December 14, 2022) – Plaintiff alleges that this statement was not vague because it specifically states the Company acknowledges a monetary debt and is "working to springboard" funding, which Plaintiff reasonably inferred to believe he would receive full compensation for his work. This statement was false because Defendant was not working to "springboard funding" and the statement was made with the intent to induce Plaintiff to continue to perform work with no intention to compensate Plaintiff or make good on all moneys owed. Plaintiff alleges he detrimentally

relied on these statements to continue to perform work with the expectation that Defendant would honor its debt with Plaintiff, which caused Plaintiff to suffer damages. **Dkt. 35 ¶ 34**;

5. "**The company acknowledges that back pay is owed to various members of the team who were not furloughed properly, or subsequently asked to do work after furlough. When the company resolves its current state of insolvency it will honor those debts and make good on all of the final calculation of all moneys owed once the audit is complete**" (Matt McGahan, CEO, Chairman of Board, March 29, 2023) – Plaintiff alleges this statement of future action was false because at the time it was made Defendant had no intentions to compensate Plaintiff or "honor all debts … once the audit is complete." The statement was made with the intent to induce Plaintiff to continue to perform work with no intention to compensate Plaintiff or make good on all moneys owed. Plaintiff alleges he detrimentally relied on these statements to continue to perform work with the expectation that Defendant would honor its debt with Plaintiff, which caused Plaintiff to suffer damages. **Dkt. 35 ¶ 38**;

6. "**Lottery was waiting on Woodford Eurasia to put the $2.5 million in the bank and everyone would get caught back up and Lottery would be able to start moving the company forward again**" (Sohail Quraeshi, CEO October 11, 12, 2022) – Plaintiff alleges this statement was false because Defendant was not waiting for Woodford to put $2.5 million in the bank and had no intentions to get "everyone caught up." Plaintiff has alleged that Defendant's board had direct connections with Woodford Eurasia and that these statements were grossly misrepresented. **Dkt. 35 ¶ 29**. Defendant deceptively made this statement to induce Plaintiff to continue to perform work with the expectation that Defendant was to receive money from Woodford that would get everyone "caught up," yet at the time the statement was made Defendant never intended to compensate Plaintiff. Plaintiff alleges he detrimentally relied on these statements to continue to perform work with the expectation that Defendant would honor its debt with Plaintiff, which caused Plaintiff to suffer damages.

7. "**Complete work in return for payroll starting back up and reimbursements being paid out**" (Amar Ali, CLO March – July 2023) – Plaintiff alleges that this statement was false because even if Plaintiff completed work; Defendant never intended to start payroll back up, fully compensate Plaintiff, or pay reimbursements. Plaintiff alleges he detrimentally relied on these statements to continue to perform work with the expectation that Defendant would honor its debt with Plaintiff, which caused Plaintiff to suffer damages.

8. "**Once the company gets funding from UCIL or another outside investor then everyone will get paid. Were just waiting for the S1 to be finalized**" (Robert Stubblefield, CFO June 6, 2024) – Plaintiff alleges this statement was false because Defendant was not receiving funding from UCIL or any outside investor that would get Plaintiff paid. Defendant made this statement to Plaintiff to induce Plaintiff to continue to work with no intentions of compensating Plaintiff. Plaintiff alleges he detrimentally relied on these statements to continue to perform work with the expectation that Defendant would honor its debt with Plaintiff, which caused Plaintiff to suffer damages.

**WHERE**:

1. **Katie Lever** – email on July 23, 2022 + verbal communications in July/August;
2. **Ryan Dickinson** – email communication and verbal on March 29 2022, and May 27, 2022;
3. **Richard Kivel** – email statement on July 6, 2022;
4. **Dennis Ruggeri** – email statement on December 14, 2022
5. **Matt McGahan** – email statement on March 29, 2023 + verbal communications in March 2023;
6. **Sohail Quraeshi** – email statement and verbal on October 11, 12, 2022;
7. **Amar Ali** – multiple emails from March 2023 – July 2023;
8. **Harry Dhaliwal** – email statement on July 6, 2022;
9. **Robert Stubblefield** – email statement on June 6, 2024

**HOW/WHY:**

Plaintiff has alleged "why" these statements were made because Defendant had not compensated Plaintiff to date, and never intended to do so when Defendant asked Plaintiff to continue to working in July 2022. The statements were made to induce Plaintiff to remain employed and to continue work for Lottery.com, Plaintiff that he was not furloughed in July. The "how" is explained above Defendant used multiple mediums and verbal communications to make these statements, including but not limited to, emails, text messages, slack messages, etc. Plaintiff was a remote employee; so majority of the statements were made through various mediums, including but not limited to, oral, email, and messaging apps. Therefore, Plaintiff has specifically alleged the "how" the representations were made and the "why" the representations were made, which Plaintiff alleges he relied on to his detriment causing him damages.

31. Plaintiff has attached his compensation letter, which created a contractual obligation for Defendant to compensate Plaintiff once he has tendered performance. ***See* Plaintiff's Employment Agreement**. Plaintiff believed he would continue to be compensated after the July 2022 representations by Defendant that Plaintiff continued to be employed. It is clear that the fraudulent representations made by Lottery.com's representatives (with actual or apparent authority) in July 2022 and representations made thereafter were false because as of this date Plaintiff has not been compensated, and Defendant continues to ask Plaintiff for work as of this filing, with no intention of compensating Plaintiff.

32. Plaintiff's Second Amended Complaint more than satisfies the Rule 9(b) heightened pleading standard; and Plaintiff respectfully asks this Court to **DENY** Defendant's 12(b)(6)

Motion because Plaintiff's fraud claim satisfies Rule 9(b) heightened pleading standard.

D. PLAINTIFF HAS ADEQUATELY PLED A QUANTUM MERUIT/UNJUST ENCRICHMENT CLAIM.

33. Defendant alleges Plaintiff seeks compensation through quantum meruit "at the applicable salary that he contracted to earn," and therefore, fails to state a legally cognizable claim because Plaintiff refused to stay within the limits of the law now leaves Plaintiff with nada on his quantum meruit/unjust enrichment claims. **Dkt. 36 ¶** 25.

a. Plaintiff has alleged that Plaintiff is entitled to recover the reasonable value of his management services rendered to Defendant. **Dkt. 35 ¶** 82. Plaintiff alleges such services to the Company provided by Plaintiff, at the request of and on behalf of Defendant, have a reasonable fair market value in excess of the minimum jurisdictional limits of this Court, for all of which Plaintiff hereby sues. **Dkt. 35 ¶** 84. Plaintiff has pled quantum meruit in the alternative based on theories of implied or quasi-contracts created during Plaintiff's employment. This cause of action prevents companies from refusing to pay an employee wages and escaping liability if the employee did not have an employment contract and failed to file a Payday claim within six months. *See Kitchen v. Frusher,* 181 S.W.3d 467, 474-76 (Tex. App.—Fort Worth, 2005 no pet.) A party to a contract may seek alternative relief under both contract and quasi-contract theories." *Woodcock v. Chase Home Fin., LLC,* No. H-11-1199, 2012 WL 393260, at *3 (S.D.Tex. Feb. 3, 2012)(citing *In re Kellogg Brown & Root Inc*., 166 S.W.3d 732, 740 (Tex. 2005)); *see* Similarly, to *Nart*, this Court should deny Defendant's 12(b)(6) Motion to dismiss Plaintiff's alternative quantum meruit claims. *Nart v. Open Text Corp.*, (W.D. Tex. Aug. 29, 2011) (denying 12(b)(6) Motion to Dismiss on Plaintiff's breach of contract and quantum meruit claims for unpaid wages).

34. Defendant asserts Plaintiff pleaded himself out of Court for any recovery accruing after March 30, 2023. Defendant cites *West Teleservices Inc*. arguing that "no recovery can be had in quantum meruit where the plaintiff 'had actual knowledge and understanding prior to' performing the services in question that he or she would not receive compensation.'" *West Teleservices, Inc. v. Carne*y, 75 S.W.3d 455, 460 (Tex. App.—San Antonio 2001, no pet.). **Dkt. 36 ¶** 28.

a. In *West Teleservices*, the Appellate court reviewed the trial court's determination of a class certification. *Id*. In that case, after discovery and deposition, the Court found that the class members had actual knowledge and understanding they were not going to be paid based on their admission in a deposition that they *had been told not to expect payment*. *Id*. at 460. This case is distinguishable because Plaintiff has alleged he has continuously *been told he would receive full salary, payroll, and reimbursements* as Defendant is either "waiting for

funds to clear" or "waiting for money to be transferred." Moreover, it is premature to determine whether Plaintiff had *actual knowledge* he would not be paid; based on the allegations in the SAC; it can be reasonably inferred that Plaintiff believed he would be paid for all work performed for Defendant. Actual knowledge pertains to fact issues, which can only be resolved through discovery. Therefore, this Court should deny Defendant's argument that Plaintiff is barred any recovery after July 27, 2023, because it is premature and it does not necessitate the dismissal of Plaintiff's quantum meruit/unjust enrichment claim.

35. Defendant asserts that the Court can dismiss Plaintiff's unjust enrichment claim because unjust enrichment is not a "distinct" or independent cause of action. *Midwestern Cattle Mktg., L.L.C. v. Legend Bank*, N.A., 999 F.3d 970, 972 (5th Cir. 2021); *Nickel Bridge Cap., LLC v. Hendrickson*, 2024 U.S. Dist. LEXIS 73091, at *18 (S.D. Tex. April 22, 2024). **Dkt. 36 ¶** 29.

a. Texas cases are split as to whether unjust enrichment is not an independent cause of action but rather the result of a failure to make restitution for benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay. *Walker v. Cotter Props., Inc.*, 181 S.W.3d 895 (Tex. App.—Dallas 2006); *Nart v. Open Text Corp.*, A-10-CA-870 LY at *6-7 (W.D. Tex. Aug. 29, 2011). Some Texas state courts' understand that unjust enrichment describes the nature of certain claims and remedies, not a distinct cause of action itself. *See Argyle Indep. Sch. Dist. ex rel. Bd. of Trs. v. Wolf* , 234 S.W.3d 229, 246 (Tex. App. 2007) . In *Midwestern* the Fifth Circuit opined that it did not remand an unjust enrichment claim as an independent cause of action. Here, the unjust enrichment claim is not pled as an independent cause of action, but serves an alternative basis based on quasi-contract theories. Moreover, the Eastern District of Texas, the Western District of Texas, and the Texas Supreme Court have found unjust enrichment "is an independent cause of action that allows recovery when there is no express contract covering the services rendered." *Quintel Tech. Ltd. v. Huawei Techs. USA, Inc.*, CIVIL ACTION No. 4:15-cv-00307-GHD-CMC at *32 (E.D. Tex. Sep. 27, 2016); *citing Nart v. Open Text Corp.*, No. A-10-CA-870 LY, 2011 WL 3844216, at *4 (W.D. Tex. Aug. 29, 2011) (citing *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 683-84 (Tex. 2000)). Here, Plaintiff has adequately sought alternative relief if there is no express agreement covering the service rendered by Plaintiff. *Woodcock v. Chase Home Fin., LLC*, Civ. A. No. H-11-1199, 2012 WL 393260, at *3 (S.D. Tex. Feb. 3, 2012)(a party to a contract may seek alternative relief under both contract and quasi-contract theories)(quoting *In re Kellogg Brown & Root Inc.*, 166 S.W.3d 732, 740 (Tex. 2005)). Therefore, similar to *Nart and Quintel* we ask this Court to deny Defendant's 12(b)(6) motion because Plaintiff has adequately pled claims for alternative unjust enrichment and quantum meruit claims.

36. Defendant asserts Plaintiff mentions unjust enrichment without any further discussion. Dkt. 37 ¶ 30. Defendant asserts that Plaintiff's SAC does not contain the word "unconscionable" and

Plaintiff was required to plead unjust enrichment with particularity. *Aponte v. Wyndham Vacation Resorts, Inc*., 2016 U.S. Dist. LEXIS 141608, at *14-15 (W.D. Tex. October 12, 2016). **Dkt. 36 ¶** 30-32.

a. The Fifth Circuit recognized that Texas law appears to "recognize two theories or species of unjust enrichment: one for passive receipt of a benefit that would be unconscionable to retain, and another for wrongfully securing a benefit" based on fraud, duress, or undue advantage. *Id*. If a plaintiff's unjust enrichment claim is based on a defendant's wrongful securing of a benefit, then a plaintiff must plead facts showing fraud, duress, or the taking of undue advantage. If a plaintiff's unjust enrichment claim is based on "passive receipt of a benefit that would be unconscionable to retain," then the plaintiff does not need to plead or prove that the defendant acted wrongfully. *Credos Indus. Supplies & Rentals v. Targa Pipeline Mid-Continent Westtex LLC* (In re KP Eng'g), Civil Action H-22-00664 at *11-12 (S.D. Tex. Aug. 15, 2022). Defendant argues that the word "unconscionable" is not located in the SAC, but facts are sufficient to infer that it is and was unconscionable for Defendant to passively retain services rendered by Plaintiff and unconscionable to refuse to pay Plaintiff his wages after inducing him to continue to work based on false representations that Defendant is "waiting on funds to clear" or "waiting for cash to transfer into the bank." *See Nart* at *11. The Western District in *Nart*, did not have to analyze the "unconscionableness" of the Defendant's actions in its opinion, which can be inferred in instances were an employer refused to pay unpaid wages. Therefore, Plaintiff has pled sufficiently that Defendant has passively retained a benefit (Plaintiff's services) that would be unfair/unconscionable to retain at Plaintiff's expense..

37. To recover under quantum meruit, the plaintiff must prove that: "(1) valuable services were rendered; (2) to the party sought to be charged; (3) which services were accepted by the party sought to be charged; (4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing such services, expected to be paid by the recipient." *Collins v. Aikman Floorcoverings, Inc. v. Thomason*, 256 S.W.3d 402, 407-08 (Tex. App.-San Antonio 2008, pet. denied.

38. Plaintiff sufficiently alleges that he provided and still provides benefits to Lottery.com for which he expected compensation or to which Lottery.com was not already entitled to receive, such as, IT services and IT support to keep Lottery.com operational. Lottery.com received benefits in the form of IT services and IT support and in return for performing these tasks Plaintiff expected

compensation based on the reasonable value of his services and/or what has been contractually agreed upon by both parties.

39. Plaintiff's live Complaint alleges adequate facts to give Defendant fair notice of Plaintiff's quantum meruit/unjust enrichment claims that are pled in the alternative. We respectfully ask this Court to **DENY** Defendant's 12(b)(6) motion as to Plaintiff's unjust enrichment/quantum meruit claims to the extent if it is found no express contract exist between Plaintiff and Defendant.

## III. CONCLUSION & PRAYER

40. Defendant's Rule 12(b)(6) motion must be **DENIED** in its entirety. Contrary to Defendant's assertions, there is no affirmative defense or other bar to relief that is clear from the face of the SAC.

41. Defendant failed to present arguments or case law in the Fifth Circuit that stipulates Plaintiff's FLSA claims should be denied on a 12(b)(6) Motion based on Plaintiff's exemption status. Defendant cited a California case, which was distinguishable because the Plaintiff in that case received $5,000, which did not transform her into a nonexempt employee..

42. Defendant failed to present an argument that rebuts Texas Law, which allows Plaintiff to pursue unpaid wages under Texas common law theories of breach of contract, unjust enrichment, and quantum meruit.

43. Plaintiff has sufficiently pleaded the "who, what, when, where, and how" in particularity as to his fraud claim, which satisfies his pleading burden under Rule 9(b). Plaintiff has identified that the agents of Defendant either had actual or apparent authority to bind Defendant to the false representations. Moreover, Plaintiff has alleged enough facts to demonstrate he detrimentally relied on the representations of Defendant, which caused him more than economic loss. Defendant has fair notice, under Rule 9(b)'s heightened pleading standard, of Plaintiff's fraud claim and the

12(b)(6) Motion must be dismissed.

44. Discovery will uncover the fact-intensive inquiries, which Defendant seeks to assert in seeking dismissal under Rule 12(b)(6). The fact that Defendant believes the facts to be “mere conclusions,” but require discovery; cannot be resolved at the pleading stage, therefore, Defendant’s 12(b)(6) motion must be **DENIED** as to all claims.

Respectfully Submitted,



**Eddie Hodges, Jr.**
Texas Bar No.: 24116523
Federal Bar No.: 3479748
**Alfonso Kennard, Jr.**
Texas Bar No. 24036888
Federal I.D. No. 713316
Kennard Law PC
5120 Woodway Dr., Suite 10010
Houston Texas 77056
Main: (713) 742-0900
Fax: (713) 742-0951
Email: alfonso.kennard@kennardlaw.com
Email: eddie.hodges@kennardlaw.com
Email: filings@kennardlaw.com
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I certify that on this 15th day of August 2024, a true and correct copy of this Response to Defendant's 12(b)(6) Motion was filed with the Court using the Court's CM/ ECF system and served on Defendant's counsel.

**ANDREW R. KORN**
State Bar card number: 11683150
Mailing address:
Andrew R. Korn, PLLC
4221 Avondale Avenue
Dallas, Texas 75219
E-mail address: akorn@receiverandrewkorn.com
Telephone number: (214) 521-0500
Attorney for Lottery.com

Eddie Hodges Jr.

## CERTIFICATE OF COMPLIANCE

I certify that this Motion response is within the page-limit ordered by Local Rule CV-7. The District Court allowed Plaintiff to correct his response with *only* five additional pages. Therefore, this Motion is presented with no new arguments, but in compliance with the local rule and no more than twenty-five (25) pages, exclusive of the caption, the signature block, any certificate, and any accompanying documents.

Eddie Hodges Jr.