UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| BRANDON MARSH | ) Docket No. A 23-CA-880 RP |
| | ) |
| vs. | ) Austin, Texas |
| | ) |
| LOTTERY.COM, INC. | ) June 12, 2024 |

---

| | |
|---|---|
| CARL WELLS | ) Docket No. A 23-CA-1081 RP |
| | ) |
| vs. | ) Austin, Texas |
| | ) |
| LOTTERY.COM, INC. | ) June 12, 2024 |

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE MARK P. LANE

APPEARANCES:

For the Plaintiff: Mr. Eddie R. Hodges, II
Kennard Law, P.C.
5120 Woodway Drive, Suite 10010
Houston, Texas 77056

For the Defendant: Mr. Andrew R. Korn
Andrew R. Korn, PLLC
4221 Avondale Avenue
Dallas, Texas 75219

Transcriber: Ms. Lily Iva Reznik, CRR, RMR
501 West 5th Street, Suite 4153
Austin, Texas 78701
(512)391-8792

Proceedings reported by digital sound recording, transcript produced by computer aided-transcription.

(Proceedings commence at 1:37 p.m. )

THE CLERK: Court calls the following for motion hearings: 1:23-CV-880, Brandon Marsh vs. Lottery.com, Incorporated; 1:23-CV-1081, Carl Wells vs. Lottery.com, Incorporated.

THE COURT: Good morning, y'all.

Let's start with announcements. Tell me who you are and who you represent.

MR. HODGES: Good morning, your Honor. Or good afternoon, your Honor.

Eddie Hodges joining on behalf of Plaintiff Carl Wells and Brandon Marsh.

MR. KORN: May it please the Court, Andy Korn for Lottery.com.

THE COURT: All right. Well, welcome, gentlemen.

Obviously, we've got two cases here today. I'm favored with the agreed scheduling order that you men have negotiated. Do we need to make any changes to those agreed scheduling orders or are they good the way they are?

MR. KORN: We need to make changes, your Honor, because we submitted it so long ago, some of the dates have already passed.

THE COURT: Okay.

MR. KORN: So if you --

MR. HODGES: I agree.

MR. KORN: Make some adjustments.

THE COURT: Sure.

MR. KORN: Other than those, I have nothing.

THE COURT: All right. Well, they appear to be identical so tell me what dates y'all need to move.

MR. HODGES: It was regards to the settlement offer, Mr. Korn, is that -- attorney Korn. Is that what you're referring to, those dates that passed as related to filing notice of written settlement offer?

THE COURT: Well, why don't you pull one of the scheduling orders out, just orient me to which paragraph.

MR. HODGES: No. 2.

THE COURT: Okay.

MR. HODGES: And No. 3.

THE COURT: Okay. What do you need there?

MR. HODGES: I would assume just additional time. I mean, we've had communications regarding settlement, you know, prior to this, reached an impasse. And so, I'm not sure that --

THE COURT: Well, I'll give you whatever you want. Just tell me whatever you want.

MR. HODGES: Obviously, that's what he's referring to as the time has passed other than -- paragraphs he's referring to.

MR. KORN: Your Honor, my suggestion would be to maybe throw them each a month.

THE COURT: Okay. So are you saying in paragraph 2, the May 24th date should go to June 24th?

MR. KORN: Yes, your Honor.

THE COURT: June 14th, then, obviously, July 14th.

MR. KORN: Yes, your Honor.

THE COURT: All right. And then, No. 3 there, a month -- I mean, you can -- the reality is you can do that anytime y'all want but we'll just bump that one a month, too. Okay. Anything else?

MR. KORN: Not from Lottery, your Honor.

MR. HODGES: Not from plaintiff, your Honor.

THE COURT: Okay. Well then, as it relates to a trial date, I want to punch this out 90 days from your suggested dispositive motions deadline of January 7. So that puts us -- I'm looking for a day anytime after April 27th of next year for a trial before Judge Pitman. And let's see here. Do y'all have a particular date or bad time? I'll just throw a date at you and put you down.

MR. HODGES: I think, yeah, taking a date certain and work from there works for us.

THE COURT: Okay.

MR. HODGES: For plaintiffs' side, your Honor.

THE COURT: All right. Let's go with May 19th, 2025 is your trial date and as you probably saw from Judge Pitman's form scheduling order, you need to ghost out the Friday before that day for jury selection in front of a magistrate judge. So just for your own if you're writing notes there, May -- Friday, May 16th would be a day upon which I'll conduct jury selection for you if we need to do that. Okay.

MR. KORN: Thank you, your Honor.

THE COURT: You're welcome. Okay. That brings us to the motions to dismiss but I -- Mr., is it, Hodges?

MR. HODGES: Yes, your Honor.

THE COURT: I wanted to ask you about this eleventh-hour filing yesterday.

MR. HODGES: Yes.

THE COURT: Thank you for being here. I appreciate the effort on your part, but how did that come about and what does force majeure mean?

MR. HODGES: I think, your Honor, I didn't have a hand in writing -- drafting that but it was a bit of confusion. I reached out to the opposing counsel the other evening to see if we could possibly save on resources of attending because I think that that was initially signed -- or this case was initially via phone or Zoom prior to being set in person and so...

THE COURT: You're right. The initial pretrial conference was because, as we've just disposed of, that's very short and ministerial but the motion to dismiss has -- at least in front of me, it needs to be a hearing. So I interrupted you. So what was it?

MR. HODGES: Yeah. And so, I think that there was a confusion. The motion was just filed to just try to reserve resources and if, you know, we were planning on -- already planning on being here, it just was -- we wanted to file and then, we amended it after he reached out to us saying his position to the motion, you know, and we knew that because he was saying that if the motion wasn't granted by 7:30 that he was going to be opposed to it, that we were to assume that we were going to be here. So we already planned on being here.

THE COURT: Well, I'm going to be up front with you. When we saw that and we're reacting to it like what lawyers file something like this the day before the hearing when both sides -- and you're from Houston, right?

MR. HODGES: Yes, your Honor.

THE COURT: He's from Dallas, right?

MR. KORN: Yes, your Honor.

THE COURT: Yeah. What is this? So we looked you up. We did a little -- I knew nothing about y'all until I started looking. That was just the odd thing to

me, citing force majeure.

MR. HODGES: Yeah.

THE COURT: But, you know, I'm going to let it all go. You're here, you're on time, that's good enough with me.

MR. HODGES: Thank you, your Honor.

THE COURT: You're welcome. So that brings us to the motion to dismiss. And, Mr. Hodges, I'm going to tell you right when you come out of the chute here, these complaints, your first amended complaint has problems.

MR. HODGES: Okay.

THE COURT: And there was a part of me that was just going to order you -- well, I just wanted to talk to you about it because I wanted to see what's going on in terms of the response, which I've spent some time with in both of these cases, starting with the contract. Is there a contract?

MR. HODGES: Yes. There is a contract, your Honor.

THE COURT: For both men?

MR. HODGES: So it is -- so there is an offer letter and it stipulated the performance. And so, what we've asserted in this is that Texas law provides two courses of remedy for denied wages or owed wages. You could either file with the Texas Workforce Commission or

you could file a breach of contract law -- a breach of contract case under Texas law. And so, this is a case where our clients have not been paid for considerable amount of time. They're owed back wages and part -- one of the routes that they can take is file a breach of contract claim and that is reliant on their performance in which they continue to perform duties that provide this ability of this company as it's trying to make deals with other companies, as well, and so, they continue to work.

THE COURT: The contract as I understand it in both of these cases doesn't show up, though. It wasn't in your original complaint, wasn't in the first amended complaint, although it said it was. It does appear to show up in your response in both of these cases. Is that true?

MR. HODGES: Yes, your Honor. And we filed it -- within our response, as well, we stipulated that the courts have stated that this was addressed in our complaint that -- in a motion to respond that we're allowed to address those issues even though it was not specifically attached to the amended complaint.

THE COURT: Yeah. No problem. It's just you're right. It's just -- I was just surprised it wasn't attached to the complaint. But it's been a while since I've been looking at -- they don't appear to be executed

contracts so are they contracts?

MR. HODGES: We will say they're executed contracts because they have the offer and there's consideration and there's acceptance, your Honor. Part of the offer is that they would complete this work, they were working their position -- offer specifically for Carl Wells in his contract stipulates also that if he would move from where he was at in California to Texas and began working his employment, the company would also cover his reasonable expenses for moving, as well. And so, he moved from California here to Spicewood, Texas to work for this company and he was not reimbursed or repaid for those expenses.

So that is a clause within this offer letter was in his contract that creates a contract under Texas law based on the back wages and also based on failure to abide by the specific clause. And specifically, also for Brandon Marsh, as well, the backpay wages and Texas -- the option to file.

THE COURT: Well then, we'll look more carefully at what you've called a contract and whether or not they actually are contracts. But if there's a contract and y'all are very careful not to say your man or men were furloughed, instead, they just kept working, why doesn't the contract govern the relationship between your clients

and Lottery.com? Why are we involved with the FLSA?

MR. HODGES: Well, we're involved with the FLSA because they haven't paid minimum wages. And so, these individuals are employees and they fall within the FLSA coverage and so, the FLSA requires that employees who work, you know, receive minimum wages and that's a separate claim compared to what a breach of contract claim saying that, hey, we had this agreement in place and you were also paying to my employment wages, the FLSA is mandating that employers that we've asserted that they're our employer under the FLSA and our employees are an employee under the FLSA. And so, therefore, let's say it's covered, covers, this matter is completely separate than the breach of contract claim.

THE COURT: Well, I mean, these guys were ostensibly going to be paid a lot of money. I think the one I just got done looking at was 9,000-something dollars biweekly. This FLSA thing seems like a chump-change throwaway claim. And I'll tell you, don't be offended by this, but the complaint strikes me as one of those you took a bunch of dirt clods and threw them up against a wall, which one might stick. I mean, do you have a contract or not? If you have a contract, that's going to drive your damages. If you don't have a contract, well then, maybe you have an FLSA argument, but that's another

issue.

And, so, is the FLSA claim standing alone or is it in the alternative? What is it?

MR. HODGES: Yeah, it's standing alone, your Honor. It's specifically they're violating the FLSA and that's, you know, minimum wage requirements and what those damages are are stipulated under the FLSA. Now, the FLSA, it also provides fact sheets in which I've attached to our response in regards to how predetermined salaries in which individuals who are -- predetermined salaries are exempt and how they lose their exemption when they're not paid the right salary or how -- excuse me, how the defendants cannot reduce the amount of salary and then, still claim some type of exemption.

And so, what it comes down to is that this is a violation of the FLSA because they knowingly have not paid these individuals anything for the past two years.

THE COURT: Okay. Can we kind of cut to the chase here? What work did your men do?

MR. HODGES: Yes. They still continue to do work, your Honor.

THE COURT: Yeah. What are they doing?

MR. HODGES: So what our clients are, there are three individuals who we represent. They are the IT individuals. They maintain the security system of

Lottery.com, which is an internet-based company or that handles the lotteries for other states and other internationally. And so, these individuals are maintaining the security of Lottery so they don't get data breaches, they don't lose their domains. These are the things that are integral to keeping this company afloat while they're trying to maintain business and operate. So these individuals are the backbone and core of this company and that's why they continue to work and that there's a steady -- the steady evidence show that these --

THE COURT: Give me an example of what that evidence is.

MR. HODGES: They have -- our clients have demonstrated they have evidence that will show that they have received work from Lottery.com throughout this period of July 22nd till present indicating specific work that needs to be done. And throughout their time, they've been receiving these e-mails, hey, if you could get this done, you need to do this, you need to do this, and this has been ongoing for last two years.

THE COURT: Okay. Two-and-a-half years working without getting paid for work that you're doing is -- I'm just surprised it's -- and I realize you filed the lawsuit last September but that's a long time to go without getting paid. What have your clients been doing for

money?

MR. HODGES: Your Honor, they've taken out loans. One of my clients had to take out a second mortgage on his home when he moved here so they've suffered damage in this -- trying to stay afloat and they want to, you know, be in this company and want to -- you know, they enjoy what they do but they're just not getting compensated and so that -- you know, we have -- I don't know. I don't have that in front of me what the actual damages are but they definitely have been damaged during that time -- during this time.

THE COURT: Did any of them file for unemployment?

MR. HODGES: None of them filed for unemployment. They've filed -- Carl Wells, specifically, he filed an arbitration prior to filing this lawsuit because his contract stipulated that there's an arbitration clause. He filed two arbitrations. The first arbitration was dismissed because Lottery failed to appear. The second same time, failed to appear. And so, as we assert in his complaint, they waived that right to arbitration because, you know, he tried twice and they didn't appear and now we're here in the eleventh hour trying to assert the same claims that he's already asserted maybe two years ago of when this was first started.

THE COURT: Okay. We'll go over a lot of the individual claims as we go forward, but let me check with Mr. Korn for a second.

MR. HODGES: Okay.

THE COURT: Is there a contractual relationship between these two plaintiffs and Lottery.com?

MR. KORN: Mr. Marsh, no. There's just an offer letter that established his salary while he was working. There are some agreed terms with Mr. Wells, your Honor, but then, it's no because the agreement is he's an at-will employee. So other than the few terms that were agreed to relating to his employment while he was employed, currently no, but he did sign some agreed terms.

THE COURT: Okay. Were both men paid pursuant to whatever this agreement was? I mean, if there's not a contract, then how can you rely on the at-will portion of it? Is there a contract or not?

MR. KORN: No, there's no contract for continued employment.

THE COURT: No. I understand that, but was there a contract entered into at the time the men started their position with Lottery.com?

MR. KORN: No for Mr. Marsh. To the extent the agreed terms is considered a contract, I'll say it is because a contract is basically just an agreement based on

some mutual consideration. It could be for very limited terms and that's what we have with Mr. Wells.

THE COURT: I guess what I'm saying, how can you rely on a contract provision about at-will employment if there wasn't a contract?

MR. KORN: A default position is they're at will.

THE COURT: Okay. Let me ask you this. Mr. Hodges has represented to me that his clients are involved in IT work. See, I couldn't glean any of this from the complaint. I mean, it was kind of a masterful job in not telling me what the heck is going on is really what the -- your first two efforts at the complaint. That's why I'm having this conversation right now.

But did your -- did Lottery.com continue to ask these men to do various tasks or jobs?

MR. KORN: I can say from the plaintiff who isn't here, Mr. Peterson, absolutely. We'd still like to have him back. That's a whole other issue of why he's not back and whether -- well, I won't -- no reason to begin to talk about that. Mr. Wells may have been asked to do some projects. I can't -- I can't speak -- my client was supposed to be with me. He got pulled away today. It's not an evidentiary hearing, but if he was here, I could give you that answer immediately. I just don't know with Mr. Marsh.

THE COURT: Gentlemen, this is historical. I mean, neither one of you can tell me whether or not there was really a contract that governed the relationship. You either have a contract for employment with Lottery.com or you don't. It was ad hoc or something but you guys can't decide what it is.

MR. KORN: My position is no, your Honor. But there is -- there are some terms that have been -- that Lottery and Mr. Wells signed. So I don't want to tell you there's not a contract and you say, well, you misrepresented that there's not a contract. I don't really think that there's anything to this substantively or that's enforceable for him now after the furlough because he's at will.

THE COURT: Oh, that's another thing. Furlough. You all say they were furloughed. Mr. Hodges is real careful to avoid using that word. Did these two plaintiffs, were they notified that they were furloughed? Did they receive an e-mail or a telephone -- anything to say pursuant to the previously entered contract or oral agreement, you are hereby furloughed, terminated at will if you want -- if that's better?

MR. KORN: Yes, your Honor. I believe the evidence is that they were furloughed, the conversations were to keep them around to do some projects on an ad hoc

basis and I know Mr. Peterson did. All of them are working elsewhere and that's going to be a mitigation issue if we ever have to go down that road.

THE COURT: Absolutely. Okay. Reason I'm asking all these questions, Mr. Hodges, you -- your response starts off -- I mean, you really take defendants to task. But then, when citing about the FLSA, you say the pleadings standard is simply cause for enough facts to raise reasonable expectation the discovery will reveal evidence. I don't know where you got that. But in the third page, you accurately cite Twombly and Iqbal, which is -- and this is the one. This is the reason I'm asking you all these questions.

A claim has a facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. And I'm telling you right now, the way your complaint is currently crafted, I can't -- I can't reasonably infer what's going on because I can't figure it out. It's perplexing to me.

So right out of the chute, the complaint lacks sufficient factual basis for me to figure this out. I mean, to me, you either have contract cases or you don't. You've gotta figure out which one you have. Or you've gotta tell me you're pleading in the alternative or

something to that effect. That's the first issue. And with that, let's maybe just run through some of these various claims. I think there's a total of nine.

I got the -- I get the impression -- I think it's Marsh that only got a couple of paychecks; is that right?

MR. HODGES: That was Wells.

THE COURT: Or was it Wells?

MR. HODGES: Wells, yeah.

THE COURT: Is that Wells? So Wells never -- Mr. Korn, he never got over the hundred, whatever the exempt amount is for FLSA. He only got paid much less than that.

MR. KORN: On an annualized basis, he got paid at that higher rate, but over a year, you're correct, no. But you invited the one point I was really looking forward to making, which is the standard is not paid. The standard is earned. So he contends he earned 250 a year, which makes him a highly compensated employee and that's -- Mr. Hodges is going to be right if -- and I think it's circular reasoning, but if they're not paid the high compensation that that destroys the exemption, then at least at the pleadings stage, we have to get into the summary judgment. But he would survive a dismissal if the exemption is destroyed by not paying.

However, and this is -- that was his arguments in document 14 in the Marsh case, plaintiff received no

compensation during the relevant period which negated any and all exemptions. So if that is the law, my argument that the complaint has shown on its face an exemption, I would be defeated. If, however, and it's set out, your Honor, at document 11-3 in the Wells case, it's the Wage and Hour Division's fact sheet on a highly compensated worker and the test is the employee earns total annual compensation of 107 or more. So their whole complaint is that he earned $250,000 a year while that he has been paid, which makes him a highly compensated employee, which takes him out of the FLSA.

THE COURT: Well, just all the variables there that you gave me then, it sounds like if he's got a well-pled complaint, this is -- you should be moving forward on that, allowed discovery and figure out which way -- which is it? Did he earn it or not?

MR. KORN: Well, he -- but he's saying he's earned it so by his --

THE COURT: Right.

MR. KORN: -- by his admission -- he's taken himself out of the act and that's -- that's why I -- that's why I made this challenge on the pleadings, Judge, because it wasn't evidentiary. It's based on his own characterization of his claim.

THE COURT: Well, that's why I've asked Mr.

Hodges. The FLSA is peanuts compared to the contract damages. So that's why I've asked him, is the FLSA in the alternative? That's what I thought it was.

MR. KORN: I think it was a -- an attempt to leverage an attorneys' fees claim.

THE COURT: Yeah.

MR. HODGES: That's incorrect, your Honor. No. They're separate --

THE COURT: Oh. There's nothing wrong with it.

MR. HODGES: Yeah.

THE COURT: People do it all the time.

MR. HODGES: No. I understand people do it all the time but that's incorrect. I mean, there's two different separate claims. You know, the FLSA requires the employers to pay minimum wage on a breach of contract --

THE COURT: No. I know, but if you have a contract case, then the FLSA is immaterial.

MR. HODGES: Yeah, in a sense, yes. But, your Honor, in regards to the damages being the same, they're still two different -- what damages that are -- that fall under breach of contract that fall under FLSA. FLSA allows a liquidated damages -- a breach of contract, liquidated damages attorneys' fees are already under breach of contract so they're separate -- they're the

same --

THE COURT: No. Listen, I get the distinctions.

MR. HODGES: Okay.

THE COURT: But I've pressed you several times and I'm not sure I've gotten an answer that I understand. Are you -- is this primarily a contract --

MR. HODGES: Yes, so --

THE COURT: -- employment case?

MR. HODGES: So we cited the case in our case, Douglas vs. Williams, this was a Judge Lee -- I'm not sure how to pronounce the last name right here from 2012 case that basically states that employees claiming denied wages can bring claims in federal court for breach of contract.

THE COURT: Yeah.

MR. HODGES: So yes. So that's, you know, the basis is that we are claiming back-paid wages and whether, you know, there's an agreement with Wells that has other stipulations that they also breached compared to Marsh, you know, that's, you know, different -- variously different cases.

THE COURT: Well, it does sound like there's some factual discovery that's going to need to take place and I'll go back. We'll go through some more of this. The complaint as it's currently crafted's got problems and I've touched on one or two of them. Let's keep moving on.

Common-law fraud and -- these fraud pleadings standard while you -- while plaintiff cites the correct standard -- here, let me go to it. In plaintiffs' response as it relates to fraud pleading, you accurately lay out who, what, where, when, why and basically how something was fraudulent.

So like, for instance, I'm looking at document 12 in the Wells case, on page 12, you start with the who, what, where, when and why and how, but on the what -- like under who you say has been alleged as Lottery.com, the board members, corporate representatives and CEO made representations. But who? I mean, I need names. And then, the when has been alleged that these statements, representations and schemes were made in July 2022 once plaintiff was given notice that he was not -- when in July? You need a date. You need some kind of setting. It was a telephone call, it was a meeting.

And then, the worst is what. You say what has been alleged as the fraudulent statements, scheme and assurances by Lottery.com, blah, blah, blah, I just went back and read the amended complaint over the noon hour. You don't lay out the statements that were made. You just say this. You say they said things that were fraudulent but you don't say what those statements were.

So I'm going to be -- I don't really want to hear

a whole lot of argument on it. I'm just telling you, you want -- you have a grasp of what the standard is but you haven't met it and you're not even close, and that's going to cover, let's see, breach of the covenant of good faith and fair dealing, unjust enrichment, tortious interference, those are just a couple.

In other words, I want you to leave this hearing, Mr. Hodges, and know that we're going to generate an order and it's probably going to recommend dismissal of the complaint. You're going to have to do whatever you have to do after that that fix the problems, but what I'm trying to telegraph to you is you've gotta be more detailed on the fraud allegations, okay?

Then what law governs what we're talking about? As I look at the motion to dismiss, y'all, is it Texas? Is it Delaware? Did the parties have a meeting of the minds on that?

MR. HODGES: That's why we pled in the alternative some of the claims breach of covenant of good faith, tortious interference. (Indiscernible) Carl Wells stipulates that Delaware but there is, you know, choice of law standard that says if they're not substantially related to that forum, you know, the courts can incline to be Texas and so, he's -- was in here in Texas, Carl Wells. And, you know, the company's here in Texas, as well, here

in Texas. So, you know, we've only filed some of the claims under Delaware law in the alternative, which you mentioned that was a different -- variety of claims but if we come to a meeting of the minds that Texas law applies in these cases, then we can definitely amend to assert that these -- you know, what Texas claims apply.

MR. KORN: Judge, we're all in. We said in the motions that Texas law applies and they only took refuge in Delaware law after we showed that Texas law negated certain of their common-law causes of action.

THE COURT: Okay. So defense is strong Texas law applies. Plaintiff says Delaware may apply in the Wells case but not the Marsh case?

MR. HODGES: Yes. But we also assert in our response that, you know, we filed in the Wells case those -- Delaware claims in the alternative because we're asserting that the Texas law applies.

THE COURT: Okay.

MR. KORN: Your Honor, the reason given in the Marsh case is that they may find a choice of law clause somewhere. I mean, you can plead all 50 states' employment laws if you're relying on speculation to save those causes of action in a complaint, they're not ripe.

MR. HODGES: We didn't have the same offer letter that Wells had and so, if it was mirrored, same as Carl

Wells was mirrored, then we would -- had already assumed that that could possibly be in there. That same choice of law clause is in there. So that's why --

THE COURT: But it wasn't.

MR. HODGES: But we haven't seen that offer letter.

THE COURT: Okay. All right. I understand.

MR. KORN: But for the same reasons Texas law would still apply.

THE COURT: Well, why is that if -- I take it the offer letter, contract, if you want to call it that, was prepared by your client.

MR. KORN: It was, your Honor. And I will say this. I suppose there's a possibility he could have gone to work in Delaware, although our principal place of business is Spicewood and we're -- we're a Delaware -- we're incorporated in Delaware. We're a citizen of Delaware and we're a citizen of Texas. But all the work is done here or out of their home states, which is not Delaware. Delaware has no interest in this --

THE COURT: I know, but they're IT guys, which means their stuff -- they're working on clouds and servers everywhere. And I guess my point is, it was your client who crafted the offer letter. He's the one who made reference to Delaware law. Shouldn't he be bound by that?

MR. KORN: Delaware law doesn't -- you know, Delaware doesn't want to police those cases. I sat in a couple of cases about -- I wouldn't call it the judicial disinterest but they basically say other states have more of an interest in protecting whatever employee-employer relationship is going on, the terms and conditions of that arrangement because it's going on outside of Delaware. So I would think the home -- so either the state the work was done or the state where our people using the brain center where our headquarters are would be the state of governing law, your Honor.

THE COURT: That may be but then, why put it in a contract? I don't get it. Did you craft those agreements? I trust you didn't.

MR. KORN: No, your Honor. I'm -- I am very new to the newest management team who's taking on -- well, it's a NASDAQ-traded company so some of the company's challenges are a matter of public record. But I think they're doing a very good job getting through a lot of that so I'm -- no. We don't have a very deep historical bench, many -- most of the management that was around is now gone but we do -- you know, we have some of the documents from the time and I can't tell you if -- why that was put in there.

THE COURT: Well, all I can tell you is I have to

deal with covenants not to compete and choice of law contracts and sometimes I would much rather apply Texas law, trust me on it, just personally. But we all the time, we have contracts that call for different choice of laws and there are some exceptions, but generally speaking, I find myself enforcing New York law, Delaware law, California law, because that's what the parties contracted to do.

But putting that aside, we're at the motion to dismiss stage. Did I miss anything on the fraud complaints, Mr. Korn? I mean...

MR. KORN: Economic loss, (indiscernible).

THE COURT: Yeah.

MR. KORN: Yeah. No. You got through the worst of the omissions.

THE COURT: Okay. And then, for instance, Mr. Hodges, defendant on the common law misrepresentation or negligent misrepresentation makes note that you only pled three and four as elements. In the response, you kind of come back with, well, that's okay, that's what we did, kind of tough. Well, actually, he's right. I mean, if you're going to redo this complaint, you've gotta lay out all the elements of each one of these causes of action.

Have you guys talked about a settlement?

MR. HODGES: Your Honor, I can -- probably can

talk more than Mr. Korn.

THE COURT: Yeah, don't give me -- I don't need the inside details --

MR. HODGES: Not inside details but we've had a lot of discussion prior to our amended complaint and, you know, there was a lot of stuff that was on the file as relates to -- we filed a default -- first entry of a lot of conversations were had. We got really close and then, kind of like right under the rug, they just decided to appear --

(Cross talk.)

THE COURT: Coming out here has confirmed that there is a back-and-forth here, right? I did not understand the factual setting.

MR. HODGES: Okay. I understand.

THE COURT: I have a much better understanding of it now. It just strikes me this is some -- obviously, to talk about. Which one of the guys, which one of the clients is the one that an arbitration effort was initiated? Was that wells or --

MR. HODGES: Wells, yes.

THE COURT: Wells. Who initiated that arbitration?

MR. HODGES: He did, Carl Wells.

THE COURT: Mr. Wells did. And I don't know the

nuts and bolts of what happened at the arbitration, but if Mr. Wells shows up at the hearing and Lottery.com doesn't, what happens?

MR. HODGES: Well, your Honor, I wasn't representing him at that time when he filed those. He did it individually, but from his understanding is that it was dismissed because they didn't pay their side of the fee to participate in arbitration, which was part of the contract, and that they dismissed it on the fact that there was no appearance. You know, I can understand we can go and maybe take a default in arbitration and come and say, hey, you know, there's a default there. But there was some stipulation that they had to appear and pay and he wasn't going to pay the arbitration fee, which was, you know, extended amount; and so, they dismissed it and so, he then filed -- oh, the first one, he filed in the Triple A and so, the Triple A said the contract says you have to file in JAMS for arbitration. So it got dismissed in JAMS -- sorry, dismissed from there to JAMS and then, JAMS said, well, he didn't appear -- they didn't appear so we have to dismiss and only remedy we had was to file this lawsuit.

THE COURT: Okay. And then, your arguments further that having initiated the arbitration process and the defendants not availing themselves of that

opportunity, they've waived the right to insist on it now; is that it?

MR. HODGES: Yes, your Honor. Yes.

THE COURT: What do you think about that argument?

MR. KORN: I think it's a good argument.

THE COURT: Yeah, I do, too.

MR. KORN: That's why we haven't moved --

THE COURT: Okay.

MR. KORN: -- arbitrate.

THE COURT: All right. Good. Give me one second. Mr. Hodges, from this point, we can do one of two things. I can enter report and recommendation for Judge Pitman's consideration suggesting that the complaint be dismissed. That will take me some time. It will take his staff some time. You have an allusion in one of -- or in your response to, well, Judge, if you don't think this complaint's appropriate, we will file an amended complaint, right?

MR. HODGES: Yes. We asked for leave, your Honor.

THE COURT: And as I've shared with you, no hard feelings, I found your complaint deficient and I'll recommend that to Judge Pitman. But if you tell me that you are intending to file a second amended complaint

within a reasonable period of time, then I'm not going to do that.

MR. HODGES: Your Honor I could file it in 14 days.

THE COURT: All right. Two weeks.

MR. HODGES: Yes, your Honor.

THE COURT: All right. Two weeks from now, file an amended complaint in both cases. That will moot out me having to write on it, but I make my points really clear here. Factually, I do not understand the setting of this case at all. Are there contracts or not, should things be in the alternative. And then, significantly with regard to the fraud pleading, it is -- it's not just who, what, when, where, why and how, or whatever. It's details that make up the who, what, when and where. That's what's lacking in this current complaint and has to be done. So two weeks from now, June 25th.

MR. HODGES: Twenty-six. Today's the 12th.

THE COURT: Oh, I'm sorry. You're right. June 26, close of business. Because I'm not going to ask you if -- if you file another complaint with some of these deficiencies, I'm not going to have another hearing. I'm just going to rule on it.

MR. HODGES: I understand.

THE COURT: Okay. Mr. Korn, probably not what

you wanted to hear, but the truth of the matter is, I can write on this, he's got a right to appeal to Judge Pitman in the interim, if he's smart and I think he is, he's going to file a motion for leave to file an amended complaint and that's what's going to happen.

MR. KORN: You have discretion. I'm not quarreling with that. You may remember, there's a provision in there asking to sanction us, asking you to take judicial notice and you just told them how bad their complaint was and now -- you know, really no -- I can order the transcript but there's no record of sort of clearing our name on our attack on what you agreed was a deficient pleading. So I am -- perhaps the corporate -- write an order denying the request for judicial notice.

THE COURT: Judicial notice for.

MR. KORN: To --

MR. HODGES: I think this is the wrong case, your Honor. He's referring to the Peterson case in which is separate that an issue that's pending as a motion to set aside a default judgment and file sanctions based on that motion but not in this case. I think we asked for judicial notice based on some of the arguments that he was making stating that we didn't assert any pleadings that show that there was not -- exemption applied and which highlighted that in our amended complaint that we verbatim

said that no exemption applied; and so, we were stating that they're making arguments that was clear from the face of the petition or the complaint that demonstrated what we were asserting in this complaint. That's in this case.

MR. KORN: Your Honor, I don't even remember apparently. In the Marsh case, defendant's response document 14, page 2 asked the Court to take judicial notice of frivolous filings and arguments presented by defendant.

THE COURT: Like give me an example of one that's frivolous.

MR. HODGES: I think this is our -- we said this, not them. So are you asking us to give you an example?

THE COURT: No. I'm asking Mr. Korn. He's saying -- he's looking for sanctions from you.

MR. KORN: No, no. No, your Honor.

THE COURT: Oh.

MR. KORN: They made -- they embedded a request, I had to respond, they made a request that you take judicial notice of frivolous filings and arguments presented by Defendant Lottery. It's in document 15, I actually made an objection at page 14, I made an objection to this request for judicial notice because I couldn't waive it or ignore it. I had to address it.

THE COURT: Yeah, that's what my earlier cryptic

reference to you open up your response with some pretty harsh, ugly allegations that, quite frankly, don't help much and now that we're getting into the detail of it, there's nothing about this that's frivolous. Defendant's done their job. So I'd be careful making those type of accusations because they're unnecessary.

MR. HODGES: They are unnecessary, your Honor, and we do apologize to this court and to the opposing counsel but it -- like I said, it was just specific as they were stating arguments that we've made -- highlighted in our petition and they were saying that it wasn't there when they were actually there. Now we understand that your stance here today is that, you know, fraud needs -- is a heightened standard to be pled and, you know, we didn't reach that standard of, you know, pleading fraud.

And we assert that we can amend our complaint to reach that standard but that -- you know, what we were asserting there after that was specifically related to the assertions of the FLSA not, you know, employees being exempt when usually at this stage, you know, it's premature to determine if an employee is exempt at the pleadings stage usually because it's a material fact of whether, you know, what his duties were and how much he made. But that was specific toward that and I could understand how that got confusion and we didn't want it

to, you know, make that reference to, you know, disfavor the Court.

THE COURT: You've gotta remember and the only thing I'm counseling you on is there's no reason to call what they're doing frivolous. You've gotta remember you and your team filed this complaint not once but twice, said you'd attached the contract and you didn't. So y'all've got your own mud on your hands, if you will.

So, Mr. Korn, I appreciate what you're saying. I have too much to do than to enter a short order. I don't see what that accomplishes here.

MR. KORN: I'm sorry to even impose and I understand how busy you are.

THE COURT: Well, it's not that. It's just I don't know what I do. Do you want me to craft an order saying I don't find defendant's responsive pleading to be frivolous at all? I mean, I don't. I'm saying that right here and right now. But --

MR. KORN: Thank you, your Honor. We're just -- there'll be arguments in the future. I'm just trying to cut things off and keep things --

THE COURT: They're really -- I already see looming clouds here that are going to be a problem and part of it is what we've already touched on. I came out here thinking this was a contract case and a lot of your

other claims were throwaway. But in your defense, Mr. Hodges, if there's not a contract, then you have to plead these other things in the alternative, I think, but that's a decision you've gotta make. But there's not even a meeting of the minds on whether there's a contract.

So I can see why the complaint is kind of cryptic and a mess to begin with. All I'm going to ask you to do is I need more factual detail to put this in a setting. I need the complaint to be actually attached -- I mean, the contracts attached. You need to also lay out in the complaint what terms are that are important here, particularly as it relates to if there's any choice of law or what these terms mean.

All right. I've talked enough. Is there anything else y'all need from me to address or talk about?

MR. HODGES: Nothing further from the plaintiff side, your Honor.

MR. KORN: I have futility arguments but if they're going to take another run at it, we'll just recalibrate when we see what we see.

THE COURT: Yeah, you might be right and I'm going to tell you -- I'm going to be ruthless on the next complaint. It needs to be y'all's best work.

MR. HODGES: Yes, sir.

THE COURT: Because if I'm seeing the same things

again, I'm just -- I just don't -- I'm not going to spend a lot of time with it.

MR. HODGES: Okay.

THE COURT: But at the same time, Mr. Korn, I mean, how could it be frivolous -- again, well-pled facts: They're suggesting these men had some type of arrangement with Lottery.com, worked for them for a while or a little bit, then at some point, plaintiffs said we were never told we were furloughed, your side says they were. That should be easily remedied by an e-mail or a letter or something.

MR. KORN: Or not getting a paycheck for --

THE COURT: Or not getting a paycheck --

MR. KORN: -- week after week after week.

THE COURT: But if he has e-mails from your -- their supervisor saying, hey, I know we've furloughed you last month, but can you look at the database on this and get back to me.

MR. KORN: And I believe it's an assumpsit case. It's either money hadn't received or perhaps quantum meruit if pled correctly but they're so -- I don't want to use the term "greedy." They're so overambitious, they want to be paid $350,000 a year when maybe they get a market rate for whatever task they do for the company, that's how it should be plead. And in all of that,

everything is just -- wants more and more and come back to contract damages or additional damages rather than give us minimum wage for the hours we worked after the furlough. Okay. Document those, maybe -- that's how the case could have settled but we don't get that kind of specificity and that theory doesn't come up. So I see it as an assumpsit case because there is no contract to enforce. Maybe they just didn't know how to go about pleading forms of assumpsit.

I think you gave them a lot of help today to go back to the drawing board and perhaps cast that cause of action. But that's -- when you take an assumpsit case and try to dress it up into every other thing than to get more than you're owed, maybe it's ambitious. Maybe a certain point it crosses the line and violates Rule 11 that that remains to be seen, depending if you accurately set up what facts you're relying on.

But that's -- what we have here is not something that is legally cognizable. You recognize that and that's the basis of the motions. So where we're at is just now, I believe, thank you for the benefit of your thoughts on all of this. It will help me craft my motion and maybe there will be a couple of counts that we don't file a 12(b)(6) on because it will be sufficiently stated.

THE COURT: And, then, we're moving into

discovery, anyways. You know, I will say this, Mr. Hodges. I think Mr. Korn's motions, not only are they not frivolous, they're actually pretty good motions. So I would look them over carefully as to the complaints that he makes because he makes some good arguments when you're redrafting this complaint.

But, Mr. Korn, I could tell you in my experience, particularly now that we've entered the scheduling order that allows the parties to amend until, I think, October of this year, my experience in this courthouse is the district judges -- and I've been doing this for 12 years -- during that time period, they literally allow the parties to amend.

So I'm being selfish here today. I'm trying to avoid writing 10 pages on a motion to dismiss that will be mooted as soon as Mr. Hodges files that amended complaint.

MR. KORN: I need to hang out here other than -- instead of the Southern District. I don't get leave to do anything.

THE COURT: Yeah, we need as many good lawyers as we can up here. All right. Listen, gentlemen, thank you for being here. Sorry to get you here. I really got you all here today -- this could have been one to do by telephone or Zoom but the complaint was so deficient that it required this discussion.

And what I'm going to leave you with is get it to me in two weeks because if you don't, I'm going to recommend the current complaint be dismissed. But I really want you to get that done in two weeks. Do your best work.

MR. HODGES: Yes, your Honor.

THE COURT: Yes. Again, I'm being reminded decorum dictates that you file a motion to amend the complaint with the new complaint attached, okay?

MR. HODGES: And would the Court just automatically file it?

THE COURT: Just file it like you normally would, then if that motion's approved, we will docket the new complaint that you've attached as -- I guess it's the second amended complaint. Here's the one danger of what I'm doing. I'm counting on you to get this complaint filed in two weeks because if you don't, then I've wasted my time and my breath and I'm going to end up having to write that order and I don't want to do it, okay?

MR. HODGES: Yes, your Honor.

THE COURT: Okay. All right, gentlemen.

MR. KORN: Thank you, your Honor.

MR. HODGES: Thank you for your time. May we be excused?

MR. KORN: We're excused?

THE COURT: Yes.

MR. HODGES: Thank you.

THE COURT: Yes.

(Proceedings conclude at 2:27 p.m.)

REPORTER'S CERTIFICATE

I, LILY I. REZNIK, DO HEREBY CERTIFY THAT THE FOREGOING WAS TRANSCRIBED FROM AN ELECTRONIC RECORDING MADE AT THE TIME OF THE AFORESAID PROCEEDINGS AND IS A CORRECT TRANSCRIPT, TO THE BEST OF MY ABILITY, MADE FROM THE PROCEEDINGS IN THE ABOVE-ENTITLED MATTER, AND THAT THE TRANSCRIPT FEES AND FORMAT COMPLY WITH THOSE PRESCRIBED BY THE COURT AND JUDICIAL CONFERENCE OF THE UNITED STATES, ON THIS 29th DAY OF AUGUST, 2024.

*Lily Iva Reznik*

~~~~~~~~~~~~~~~~~~~~~~~~~
*LILY I. REZNIK, CRR, RMR*
*Official Court Reporter*
*United States District Court*
*Austin Division*
*501 West 5th Street, Suite 4153*
*Austin, Texas 78701*
*(512)391-8792*
*SOT Certification No. 4481*
*Expires: 1-31-25*
~~~~~~~~~~~~~~~~~~~~~~~~~